## WHITE, Agent, v. CROW and others.

*(Circuit Court, D. Colorado.   June 25, 1883.)*

1. CORPORATION—CONFESSION OF JUDGMENT—COLLATERAL ATTACK.
     Upon a confession of judgment by a corporation, the court in which the action is pending must, of necessity, judge of the authority of any natural person who may appear for the company in that behalf, whether it be an attorney at law or an agent of the company, and its judgment as to the right and authority of the person so appearing to bind the corporation, must be conclusive in all other proceedings where the same judgment is drawn in question and not open to collateral attack.

2. JURISDICTION OF CIRCUIT COURT—RESTRAINING PROCEEDING IN STATE COURT.

A bill to restrain the sheriff of a county in the execution of process of a county court of co-ordinate jurisdiction with the circuit court of the United States, or to restrain the execution of a deed in pursuance of a sale under such execution, cannot be maintained in the circuit court; but when the parties to whom such deed would go are before the court, the court may deal with them and dismiss the bill as to the sheriff.

3. SAME—SETTING ASIDE SALE.

The circuit court has not jurisdiction to set aside a sale made in the court of the state, with a view of ordering another sale, because the sale was not made pursuant to the statute, and the party claiming such sale to be void must proceed in the state court.

4. SAME—RIGHT TO REDEEM—PAYMENT OF PART OF CLAIM—REFUNDING MONEY PAID.

Where a party owning an interest in the property of a corporation that has been sold under execution and purchased by several parties constituting a pool, has, with a view to redeeming such property, paid to such parties a portion of the claims against the company, they cannot, while retaining the amounts so paid, deny the right of such party to redeem, on the ground that the time allowed by the statute for redemption has expired; and unless within a reasonable time they refund the money so paid, a decree allowing redemption or payment of the balance of the claims will be passed.

HALLETT, J., (*orally.*) In the year 1881 the Brittenstein Mining Company owned six or eight mining claims in the county of Chaffee. In the course of its operations it had incurred debts which it was unable to pay, amounting in all to $5,000 or $6,000; and early in the following year, 1882, these claims were put into judgments by the parties who held them. There were five of these judgments, and upon three of them sales were made of the property of the company during the month of June, 1882. The delay in execution of the judgments was procured by the officers of the company, through some negotiations carried on with a view to the settlement of the demands. One of these judgments was obtained by Joseph R. Crow, upon a claim assigned to him by John B. Henslee, who was a stockholder in the Brittenstein Company, and the agent of the company in this state to receive service, appointed by the company pursuant to the statute of the state. He at one time had something to do with the management of the company, but at the time that he assigned his demand to Crow, and at the time judgment was entered on that demand, he had no official connection with the company, but was in correspondence with its officers, residing in New York, in respect to the settlement of these claims. He assigned his demand against the company on the first day of January, 1880, or about that time, and on the ninth day of that month Crow brought suit, and served his process upon Henslee, as the agent of the company in the state. Four days later, on the thirteenth of January, Henslee appeared in the county court of Lake county, in which the suit was brought, and confessed judgment in favor of Crow against the company for the demand, amounting to $1,794.33. No execution was issued upon this judgment, or upon the other judgments, until some time in the month of June following, or if executions were issued no sale was made until that time. I have not inquired as to the date of execu-

tions. The time for the redemption of the property expired in December of the same year. Proceedings were had in a court of the state of New York, upon which the property of the company was sold by a receiver to Mr. John D. White, plaintiff in the bill in equity, on which a decree is now to be entered. Mr. White was also a stockholder in the Brittenstein Company; he was at one time its president. At the time of these transactions he was a director of the company, and at the time of these proceedings in the court of New York, also; and if the company was still in existence—of which I am not advised—after the sale of the property, he was still a director. In December following, as a purchaser of the property, he telegraphed to Mr. Smith, an attorney residing at Denver,—I think, on the sixth of December,—to proceed to Leadville and Buena Vista, to confer with parties there—among others, Mr. Henslee—in respect to claims and demands against this property, with a view to redeem from the sales which had been made on judgments obtained against the Brittenstein Company, as I have stated. An interview took place between Mr. Henslee and Mr. Smith on the seventh of December, in reference to these matters, in which something was stated as to these several demands against the company, and some things, which were not stated, it was agreed might be ascertained from the records of Chaffee county at Buena Vista, to which Mr. Smith proposed to proceed for the purpose of getting full particulars in respect to matters in which he was acting for Mr. White. Among other matters discussed at that time was a demand on the part of Henslee against the Brittenstein Company, and Mr. White, as the successor of that company, for annual work done on the claims of the company during the years 1881 and 1882. Henslee represented that some of this work had been done, and some of it was still in progress; he expected to have evidence of its completion in a day or two to present to Mr. Smith, and if the property was to be redeemed he desired to have the money so expended refunded to him.

At this point it may be proper to state, also, that while Mr. Henslee had been corresponding with the officers of the Brittenstein Company, in New York, and with Mr. White, plaintiff in this suit, to some extent as to the settlement of these claims, he had also been acting for certain parties in St. Louis and Leadville—five or six of them—called in the evidence the Western Pool. These parties, some of them,—all, I believe, but one,—had been stockholders in the company, and had agreed together to unite in the purchase of the several claims against the company with a view to secure the property; to protect the interest which they had in the company; to protect themselves in respect to moneys which they had expended in behalf of the company, and so on. It seems to have been thought desirable on the part of all persons who were connected with these affairs to get this property; the property was much more valuable than the demand against it, and any one who should secure it would be able to realize some-

thing in addition to the claims which were made against it. With that view these parties—Noel, of St. Louis, and Loker and Simmons—I don't know who all—had appointed Mr. Henslee to communicate with the owners of these claims and purchase them, and he had done so. He assumed to act and did act for them in the settlement of these claims, so far as they could be settled. He did not deny Mr. Smith's right, or Mr. White's right, to redeem the property at the time, and in the manner provided by law, nor conceal his connection with the parties for whom he was acting. It seems to have been contended by counsel for plaintiff that his position in attempting to act for parties in New York, and at the same time for these other parties, was of doubtful character; but I do not discover anything in the evidence to impute wrong to him, or any effort on his part to conceal his relations with this Western Pool, or the circumstance that he was endeavoring to secure the property for them. Thus matters stood about the seventh of December. The time for redeeming under one of the judgments would expire on the tenth, under another on the seventeenth, and under another, I believe, on the twenty-fourth, of December. Mr. Smith, as the agent of White, redeemed from all the judgments but one. He went further and paid off some judgments upon which no sales had been made. He went still further and paid the money which was due for annual work,—some of it due to Mr. Henslee, having been advanced by him, other portions to parties who had done the work. From the judgment in favor of Crow he declined to redeem, from some notion that that judgment was void in itself, or so far irregular that Mr. White was not bound to recognize it, upon the ground, I suppose, that Mr. Henslee, having owned this claim at one time, his assignment to Crow was collusive, without consideration, done with intent to put the matter in judgment under process served upon him as agent of the company, and without the knowledge of the officers of the company; and upon the ground, also, that this judgment was entered within four days after the service of process upon Henslee, and by his confession, he not having authority to act for the company in that behalf. That, I believe, is in substance the position assumed by counsel here, and this bill was filed to redeem from this judgment upon some such theory as that.

We are unable to recognize the force of these suggestions. While it may be true that Henslee was without authority, and as agent of the company, appointed to receive service of process, he would not have power under the statute to confess judgment in favor of any one and bind the company in that way, the judgment, therefore, was irregular, perhaps subject to reversal, on that account; yet we do not think it is open to collateral attack. Upon a confession of judgment by a corporation the court in which the action is pending must of necessity judge of the authority of any natural person who may appear for the company in that behalf, whether it be an attorney at law or an agent of the company, and its judgment as to the right and

authority of the person so appearing to bind the corporation must be conclusive in all other proceedings where the same judgment is drawn in question.   What the force and effect of such a confession shall be in any regular proceeding to vacate it, and in any court of review to which it may be carried, is not for us to say.   We think that the judgment of the county court, entered upon Mr. Henslee's confession, must be taken to be valid and binding upon the company.   It is in evidence that the claim was a valid one; the amount for which judgment was given was due from the company to Henslee; he assigned upon good consideration to Crow.   His right to assign cannot be denied; and if there be any infirmity in the matter in respect to his right and authority to appear for the company and confess judgment in its behalf, that is a matter which can only be inquired of upon some proceeding to vacate and set aside the judgment.

In respect to the particular circumstances of this case, it is in evidence that some of the officers—certainly the vice-president, in particular—knew of the entry of this judgment very soon after it was entered, and long before any sale was made under it.   Mr. White, the purchaser of the property, and the plaintiff in this suit, knew something of it long before he became a purchaser of the property, and no step was taken by the company itself to attack the judgment and set it aside in the court in which it was rendered, or to remove the record into the supreme court of the state, with a view to make inquiry there concerning it.   So that we are prepared to say that in this proceeding, and so far as the right of Mr. White to redeem from it is concerned, that no question can be raised in respect to its validity. And the failure of Mr. White to redeem from it within the time prescribed by statute was one which probably may affect his interest very materially in respect to this property.   We do not see that he offers any valid excuse for failure to do so.   Mr. Smith was informed of the existence of this judgment, and of the time the sale was made, 10 days before the expiration of the time for redemption.   Of course, it was in his discretion to act, or decline to act, as he thought best. It is to be said further, relative to this matter, that this bill was filed against the judgment creditors and the sheriff of the county to enjoin further proceedings under that judgment.

In so far as it is proposed by the bill to restrain the sheriff of the county in the execution of process of a court of Lake county, it cannot be maintained in this court.   In that respect, it is a bill to restrain proceedings in a court of co-ordinate jurisdiction, and as such we have no greater authority in respect to the execution of a deed in pursuance of the sale than we have in respect to the sale under the execution in the first instance; and so, by the express language of the statute of the United States,—I do not recall the number of the section,—we are forbidden to interfere with the conduct of the sheriff in respect to that matter.   But having the parties before us to whom the deed would go, we conceive we have a right to deal with them and to

dismiss the bill as to the sheriff. The parties, whose ultimate right it is to have this property, are before the court. It appears that these purchasers of the various judgment claims from the execution creditors, Crow and Evans, and more of them, are before the court. They came in voluntarily. The members of the Western Pool made defense in their own name, becoming parties to this bill. Having them before the court, we have a right to deal with them directly in respect to this matter, and without reference to the sheriff, and to proceed against them as we would proceed against the sheriff, if it were competent for us to entertain jurisdiction as to him. This, I suppose, determines everything that can be said in reference to this matter except one. As already stated, those parties, constituting the Western Pool, bought up all these claims against the company. The amount in all is something over $5,000—between five and six thousand. They had also a claim for annual work done in the year 1882, and they allowed Mr. White, plaintiff in this suit, upon the theory and proposal to redeem from all these demands, and acquire the property for himself, to pay a good part of these demands,—something over $3,000,—four of the judgments, and for the annual work.

In our view, and we think it should so be regarded in any court of equity, these demands, held by one party and for one purpose, should be regarded substantially as one thing, and one accepting payment of any part of them cannot deny Mr. White's right to pay the remainder without refunding what he had received from him. It is not competent for them to say, we will take part of the money in payment of these demands and keep it, because you have failed in respect to one, under some mistake of fact or law. We will hold on to this and deny your right to redeem, and keep the property also. We think that would be most inequitable and unjust, and therefore we propose to say to these defendants that they must refund the money, or admit the plaintiff's right to redeem this property. The decree will be that, within 30 days from the date of entering the decree, the defendants refund the money received in partial payment of the several demands against this property, with interest; or, failing in that, that the plaintiff be allowed to pay the remainder, and to have a deed from these parties of such interest as they may have acquired or may acquire under these several sales. As to the sheriff the bill will be dismissed.

There is a point which I intended to advert to in the course of discussion, to which I may allude now. In respect to the sale of the property *en masse*, it is alleged in this bill, and not very well denied, that this property was sold in bulk—six or eight claims, whatever their number may be—as one claim, and upon that the plaintiff contended, as it is decided in some states, the sale was void, or, as held in others, it was voidable, and he would have the right to redeem. We do not think it can be regarded as a void sale, and if it be voidable the right can only be asserted in a court of the state. We have

not jurisdiction in this court to set aside a sale made in a court of the state, with a view of ordering another sale, the sale not having been made pursuant to the statute. That portion of the bill, therefore, should be dismissed, without prejudice to the right of the plaintiff to maintain another bill for the same cause in any court of competent jurisdiction.

I believe that covers the whole ground.

It is pretty clear to us that plaintiff has no other right than to have this money back, with interest. We are not disposed to maintain his possession by injunction.

If the defendants here get legal title from the sheriff they can assert that title in an action at law; we are not disposed to interfere in a suit of that kind.

