# 𝔚ytheville.

## THURMAN & ALS. v. MORGAN, RECEIVER.

### August 14, 1884.

1. JUDGMENTS AND DECREES—*Void on Face.*—Creditor, instead of proceeding at common law to recover his claim, obtains an order for its payment on summary rule to show cause. This is a departure from the established modes of procedure, and the order so obtained has not the force of a judgment, but is void on its face. *Nulton* v. *Isaacs,* 30 Gratt. 740.

2. IDEM—*Idem—Case at Bar.*—H., as receiver, and his sureties, executed his official bond. Before making report H. died. M. succeeded him. Rule was awarded to compel H.'s adm'r to report H.'s action as receiver. He reported that the fund had not come to his hands and that he could not report H.'s action. B. having taken accounts as ordered, reported that there was $3,683 due from H. as receiver. Report being confirmed, M. got a rule against H.'s administrator and sureties to show cause why a decree should not be entered against them for said sum. They appeared and moved to quash the rule. The motion was overruled and the decree entered against them. Upon appeal here—

HELD:

    1. By reason of their suretyship, the sureties were neither parties to the suit nor officers of the court, and there was in their hands no fund subject to the order of the court, and hence they could not be proceeded against by rule.

    2. Their liability, as sureties, could be enforced only by action on their bond in a common law court, where they could make defence on trial by a jury.

    3. The order for the payment of said money, so obtained by rule, is a departure from established modes of procedure, and is void.

Appeal from decree of circuit court of Wythe county, entered 15th March, 1884, in a chancery cause therein pending under the style of Henderlite, trustee, against Abijah Thomas and als.

By the decree complained of, an order was entered, on a rule to show cause against Thomas H. Thurman, George S. Smith, George D. Smith, and W. D. Wilmore, who were sureties of said Henderlite on his official bond as receiver in said cause, for the payment of the sum of $3,663.53, with interest from 3d September, 1878, until paid, and costs. From this decree the said sureties, Thurman and als., obtained from one of the judges of this court an appeal and a writ of *supersedeas.* Opinion states the case.

*John A. Campbell, D.. C. Miller,* for the appellants.

*James H. Gilmore,* for the appellee.

In this case the question is whether a court of chancery can call upon its own officers to account for funds placed by said court in their hands, and compel them to obey its orders and decrees by means of its own process, or is it *dependent* upon a court of law to effect this.

That this is a power inherent in every court, to compel obedience to its own decrees, would seem to be a fundamental principle.

A receiver is an officer of the court which appoints him, and so, likewise, are his sureties in a sense. High on Receivers, § 164 ; *Ibid,* § 133, note 4, and case there cited of *Glossup* v. *Harrison,* 3 Ves. & Bea. 134.

If the receiver and his sureties upon his bond are officers of the court in any sense, then the court has the inherent power to compel them to obedience to its own orders and decrees in the cause in which the receiver is appointed, through its own modes and this, although they may not be parties to the *record* of the cause, or capable of being made so.

2 Dan'l Ch'y Pr. (2d Amer. ed. by Perkins) top p. 1322, side 1277. In the matter of *Seamen et als.,* 2 Paige, 408; Kerr on Receivers (2d Amer. ed.), pp. 254, 255. *Durham and Wife* v. *Minard,* 4th Paige, 440.

The practice in the English courts is entirely different from ours, and hence the resort is rarely had there to the proceeding by motion and rule. In those courts when a receiver is appointed, he and his sureties enter into a recognizance, which is enrolled and becomes thereby, in effect, a *judgment* for the amount of the recognizance; but no execution can issue upon it without further proceedings. When the receiver makes default he can be proceeded against by motion, &c., as has been done in this case, or on motion, notice being given to him and his sureties, leave may be given to proceed in one of the offices of the common law court in chancery, known as the Petty Bag office, by *scire facias* upon this enrolled recognizance, against the receiver and sureties to show cause why execution should not issue thereon, if they did not appear and plead execution issued. If they did appear and plead and issue was made then, and only then, was the question sent to the King's Bench to be tried by a jury? Unless the parties appeared and plead in the English courts, the question was never sent to a law court for trial. And so here it is submitted, that these parties cannot be heard insisting that the case shall be sent to a law court when they never answered even, or showed any cause why the case should be so sent. They do not even pretend now, that they have any defence which they propose to make. The only irregularity in these proceedings at all, is the step taken against the administrator of Henderlite, the receiver, and that was taken in the interest of the appellants here. And as the administrator does not complain the court is not called upon to consider that question. It does appear that where the receiver dies, and it is desired to hold his *personal representative* responsible, it is necessary to file a bill against him; but, as before stated, no complaint being made by the administrator, the court is not called upon to look into this question.

Dan'l Ch'y Pr. Vol. 3 (2d Amer. ed. by Perkins), top p. 2072, side p. 1998.

VOL. LXXIX—47.

In this case the default of the receiver was first shown; and in order that the sureties might have an opportunity to see that the accounts were properly taken, they were notified of the time and place of taking the account. Judge Bolling finds that Henderlite, as receiver, collected for the cause the sum of $3,683.53, with interest from September 3d, 1878, which he has never accounted for.

When this was ascertained, an order for payment might at once have been made against these sureties; but for their benefit, hoping that something might be obtained from Bonham, administrator of Henderlite, and he not objecting to this mode of proceeding, an order was made for Bonham, administrator, to pay out of the assets, in his hands, of Henderlite's estate.

It was only when he did not pay that an order was made upon the sureties of Henderlite, as receiver, to pay, and this we think the circuit court of Wythe had the right to do.

The pretension now made for the first time in the appellate court, that the receiver did not give bond, will not avail them, for from the *real.* record, which is before the court, and which alone this court can consider, the presumption will be that the receiver · did give the bond. The *gratuitous* certificate of the deputy clerk of the Wythe circuit court, made a. month after the decree appealed from was rendered, cannot be considered by this court. This straw cannot save the drowning appellants. If it be· true, and this objection had been made in the court below, *that court* could have seen that these sureties were fully protected. See upon the point of this gratuitous certificate, *Cahill, Ex'or of · Quinn*, v. *Pintony*, 4 Munf. 371; *Humphrey's Adm'r* v. *West's Adm'r*, 3 Rand. 520–21.

Upon the whole case the decree of the court below should be affirmed.

LEWIS, P., delivered the opinion of the court:

By a decree of the circuit court of Wythe county, entered at its September term, 1878, in the chancery cause therein pending of "Henderlite, trustee, against Thomas and others," Geo. W. Henderlite was appointed receiver with authority to collect a certain bond and invest the proceeds. The decree required the receiver, before proceeding to act under it, to enter into a bond before the clerk of the court, with good security, in the penalty of $8,000, conditioned according to law. Henderlite executed the required bond with the appellants as his sureties. He afterwards died, having made no report of his acting as receiver, and at the December term, 1882, one V. S. Morgan, the appellee, was appointed receiver as his successor. At the same term a rule was awarded against the administrator of Henderlite to report to the court at its next term what had been "the dealings" of Henderlite as receiver. At the following March term, the administrator, in answer to the rule, reported that no part of the fund had come into his hands, and that he was unable to report what steps had been taken by Henderlite in respect thereto. At the same term William H. Bolling was appointed a commissioner to take certain accounts, who, having taken the same, reported that the sum due from Henderlite, "commissioner or receiver," was $3,683.53, with interest thereon from September 3d, 1878. The report was confirmed, and a decree entered against Henderlite's administrator and the sureties on his receiver's bond for the sum so ascertained to be due, and directing execution to issue for the same. At a subsequent day of the term so much of the decree as authorized execution to issue against the sureties was set aside, and the receiver, V. S. Morgan, was authorized, in the event of the failure of the administrator to pay the said sum, with interest, within thirty days, to withdraw his predecessor's bond for suit, or, "at his option, a rule" was awarded him against the sureties, to show cause at the next term why a

decree should not be entered against them for the said sum with interest and costs. The receiver elected to take a rule, and accordingly the sureties were summoned to appear and show cause why a decree should not be entered against them as aforesaid. They appeared and moved to quash the rule, but the motion was overruled and a decree entered against them for the sum of $3,663.53, with interest and costs.

This decree is plainly erroneous. In no just sense were the sureties parties to the suit or officers of the court by reason of their suretyship. There was no fund in their hands, or which ought to have gone into their hands, subject to the order of the court, and they could not, therefore, be summarily proceeded against by a rule to show cause. Their liability, if any, grows out of their undertaking as sureties on the bond, and can be ascertained and enforced only by suit on the bond in a common law court, where full opportunity for making defence and the constitutional right of trial by jury can be had. The circuit court was as plainly without jurisdiction to decree against them upon a rule to show cause as in the same proceeding to have condemned them to be hanged. Such a departure from the established mode of procedure renders the decree not only erroneous, but void. The case of *Nulton and others* v. *Isaacs and others*, 30 Gratt. 726, is an authority in point. There certain judgments against debtors of certain banks in the hands of a receiver, obtained on summary rules to show cause in the chancery suit in which the receiver was appointed, were held to be invalid. Judge Moncure, delivering the opinion of the court, said: " We are of opinion that where, as in this case, the creditors, instead of proceeding by the common law action of debt to recover their claims, obtain an order for their payment on a mere summary rule to show cause, such an order, though no defence be made to the rule, has not the force and effect of a judgment. The order is void on its face. The defendant is entitled to the benefit of a common law action, in which he can

Opinion.

regularly make his defence and have the benefit of a trial by jury. An order might, no doubt, have been made in that suit for the collection of debts due the defendant and liable to the claim of the plaintiff. But such collection, if it could not be made without legal proceedings, would have to be made by action at common law." The decree is reversed.

.DECREE REVERSED.