# Staunton.

## BECK v. SEMONES' ADMINISTRATOR.

### September 23, 1926.

1. JUDGMENT AND DECREES—*Fraud in the Procurement of Judgments—Preference by Insolvent Corporation.*—In the instant case, a creditors' suit, certain judgments against a corporation were assailed on the ground that they were obtained by fraud. The allegation of fraud in the procurement of judgments was not sustained by the evidence. There was no evidence of actual fraud, but the plaintiffs in the judgments, if valid, obtained priority over one of the creditors for the satisfactions of their debts.

   *Held:* That this was not *per se* fraud.

2. CORPORATIONS—*Insolvent Corporations—Preferences.*—A corporation, though insolvent, may give preference to one or more of its creditors over others, if it acts in good faith, with no fraudulent intent.

3. SERVICE OF PROCESS—*Personal Judgments—Service on President of Corporation—President also the Plaintiff—Parol Evidence—Verity of Records—Case at Bar.*—In the instant case, a lien creditors' suit, certain judgments against a corporation were assailed on the ground that the trial court never acquired jurisdiction over the person of the defendant corporation. The record showed that "the defendant appeared by its president," without showing who that president was, and it was argued that this fact could not be shown by parol. In one of the cases in which the judgments in question were obtained, the president of the corporation was the plaintiff and in the other he represented the plaintiff.

   *Held:* That parol evidence was admissible to show this fact. No attack was made on the absolute verity of the record, but the parol evidence was offered to explain a latent ambiguity in the record itself.

4. SERVICE OF PROCESS—*Personal Judgments—Service on President of Corporation—President also the Plaintiff—Parol Evidence—Verity of Records—Case at Bar.*—In the instant case, a lien creditors' suit, certain judgments against a corporation were assailed on the ground that the trial court never acquired jurisdiction over the person of the defendant. The record showed that "the defendant appeared by its president" without showing who that president was. Complainant in the creditors' suit offered to show by parol evidence that

the president of the corporation was the plaintiff in one case in which judgment was obtained against the corporation and represented the plaintiff in the other. Everything in the record was admitted to be exactly true as therein stated, and the offer was not to vary, alter or contradict it, but to show the circumstances under which the judgments were entered. The fact that the plaintiff was, at the date of the judgments, president of the defendant company was the only fact sought to be shown by the parol evidence, and as this fact in no wise impugns the verity of the record, it was permissible to show it.

5. SERVICE OF PROCESS—*Corporations—Service on Officer Who is Suing the Corporation—Collateral Attack upon the Judgment.*—When an officer of a corporation, either in his own right or as agent for another, sues the company of which he is the officer, he abandons for the occasion his position as officer and cannot commence an action against the company by service of process upon himself as officer. This would be simply service of process upon the plaintiff instead of upon the defendant. If this could be done and the judgment rendered thereon could not be collaterally assailed, it would open the door to the grossest fraud, and subvert the orderly adminis- tration of justice. Where the relation of the officer served to the plaintiff is such as to make it to his interest to suppress the fact of service, service cannot be made upon such officer, although he is within the terms of the statute designating those upon whom service may be made.

6. SERVICE OF PROCESS—*Invalid Service—Judgment Void—Collateral Attack.*—If the service of process was invalid then the court never acquired jurisdiction of the defendant, and the judgment was void. If a judgment is void, it may be assailed anywhere, at any time, in any way, by anybody. It is immaterial whether the assault be direct or collateral. It is a nullity and may be treated as such.

7. SERVICE OF PROCESS—*Invalid Service—Invalid Appearance—Judgment Void—Collateral Attack—Case at Bar.*—In the instant case, a lien creditors' suit, certain judgments against a corporation were assailed on the ground that the trial court never acquired jurisdiction over the person of the defendant. The record showed that "the defend- ant appeared by its president" without showing who that president was. When the ambiguity in the record is explained, the record itself shows that Beck, the plaintiff in one case, and the agent of the plaintiff in the other, was also the president of the defendant company and as such entered appearance for the defendant. The want of jurisdiction over the defendant thus affirmatively appears from an inspection of the record itself, after the ambiguity is removed, and hence renders the judgment void.

8. SERVICE OF PROCESS—*Invalid Service—Effect of Decision of Trial Court that the Service was Valid—Case at Bar.*—In the instant case, a lien creditors' suit, certain judgments were attacked on the ground of

lack of jurisdiction in the trial court.  Neither of the actions in which the judgments were obtained could have been lawfully commenced by service on one Beck, as president of the company, or upon appearance for the company entered by him, as Beck was the plaintiff in one case and the agent for the plaintiff in another, and the decision of the trial court that such service or appearance was valid could not make it so.  If the service or appearance was illegal, a decision of the trial court to the contrary could not make it legal. If such were true, then the trial court could never, under any circumstances, enter a void judgment.

9.  JUDGMENTS AND DECREES—*Collateral Attack—Want of Jurisdiction.*— Where the trial court has adjudged that it had jurisdiction of the subject matter and of the parties, but did not have such jurisdiction, its judgment is void and subject to collateral attack.

10.  JUDGMENTS AND DECREES—*Collateral Attack—Want of Jurisdiction— Foreign Judgments.*—Where it is sought to enforce in one State a judgment rendered in another State, the jurisdiction of the court rendering the judgment may be assailed collaterally.

11.  JUDGMENTS AND DECREES—*Collateral Attack—Want of Jurisdiction— Domestic Judgments—Common Law.*—According to the common law rule adhered to at the present time in most of the States, the presumption in favor of the jurisdiction of a court of general jurisdiction is conclusive and its judgment cannot be collaterally attacked where no want of jurisdiction is apparent of record.  Whenever the record of such a court is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that whatever ought to have been done was not only done but that it was rightly done. So, where a judgment contains recitals as to the jurisdictional facts, these are deemed to import absolute verity unless contradicted by other portions of the record.  Consequently, such a judgment cannot be collaterally attacked in courts of the same State by showing facts *aliunde* of the record, although such facts might be sufficient to impeach the judgment in a direct proceeding against it.

12.  JUDGMENTS AND DECREES—*Collateral Attack—Want of Jurisdiction— Domestic Judgments—Rule in Virginia.*—In the instant case it is pointed out that there is no case in Virginia directly deciding the question whether the want of jurisdiction of a domestic court to render a judgment can be raised collaterally, where the want of jurisdiction is not apparent from the record, and the Supreme Court of Appeals did not find it necessary to decide that question, although it reviewed a number of cases bearing on the question.

13.  SERVICE OF PROCESS—*Corporations—Service on Officer of Corporation— Name of the Officer—Quaere—Case at Bar.*—While process may properly be issued against a corporation, it must be served on a natural person, for it cannot be served on that invisible, intangible entity called a corporation, and the return should show the person on whom it

is served. It is doubtful whether or not it is sufficient to show that service was on the "president" of the defendant, without showing the name of the person filling that office. In the instant case, it may well be doubted, therefore, whether the appearance of the defendant by "its president," without disclosing his name, was sufficient.

14. JUDGMENTS AND DECREES—*Verity of the Record—Parol Evidence to Show the Name of the President of Defendant Corporation upon which Service was had and Who Appeared for the Corporation—Case at Bar.*—In the instant case, a lien creditors' suit, attacking the validity of certain judgments, the Supreme Court of Appeals adhered to its former decisions on the subject of the verity of records and their freedom from collateral attack, and did not think that the decision of the instant case permitting parol proof of the name of the president or defendant corporation in the actions in which the judgments were obtained, where the record showed that "defendant appeared by its president," without showing who that president was, was any departure therefrom, but, if it is such a departure, the instant case must be considered as an exception to the general rule.

15. CORPORATIONS—*Authority of President—Action of Board of Directors—Case at Bar.*—In the instant case, a suit by lien creditors attacking certain judgments against a corporation, the president of the corporation appeared for the corporation in the action in which the judgments were obtained and waived notice. The only authority that the president had for the action was the personal assent of a majority of the persons composing the board of directors of the company to do whatever was necessary to protect the interests of the company and of the president and another. This was not official action of the board and hence was not sufficient to warrant the action taken by the president, and what he did was not at all to the interest of the company.

16. CORPORATIONS—*Authority of President—Waiver of Notice—Ratification by Board of Directors.*—In the instant case, a lien creditors' suit attacking the validity of certain judgments, the president of defendant corporation, in the actions in which the judgments were obtained, appeared for the corporation and waived notice. This the president had no authority to do. The action of the president was ratified by a resolution of the board of directors adopted after the judgments were rendered.

*Held:* That this was wholly unavailing, as no subsequent action of the board of directors could confer jurisdiction upon the court if it did not exist when the judgments were rendered.

17. SERVICE OF PROCESS—*Time of Service—Time of Return—Section 6046 of the Code of 1919—Waiver.*—Objection was made to the validity of certain judgments because the notice of motion was not served fifteen days before the return day and was not returned to the

clerk's office within five days after service, as required by section 6046 of the Code of 1919. These provisions were entirely for the benefit of the defendant and could be waived. If the appearance of defendant was proper, it was a waiver of process and a return thereof.

Appeal from a decree of the Circuit Court of Bedford county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Langdon Lowry, Leonard G. Muse, Chitwood, Coxe & Rogers,* for the appellant.

*Martin & Wingfield,* for the appellee.

BURKS, J., delivered the opinion of the court.

The Blue Ridge Metals Corporation was a Virginia corporation, but all of its stock was owned by persons residing in or near Pittsburgh, Pa. U. M. Beck was the president of the company and E. T. Beedle its treasurer. The company bought two tracts of land in Bedford county, Virginia, supposed to contain valuable mineral deposits. One of these tracts, containing 474.25 acres, was paid for in full. The price of the other tract was something over $18,000. The cash payment reduced the purchase price to $12,500, for which the company gave its notes and a deed of trust on this tract. Default was made in the payment of the notes and this tract was sold under the deed of trust and netted the vendor $4,085. The vendor, J. W. Semones, having died, his executor, on November 23, 1923, gave notice to the company that on December 12, 1923, it would apply to the Court of Law and Chancery of the city of Roanoke for a judgment against it for the balance on said notes, and such judgment was accordingly ren-

dered on the date last mentioned. There is no contro-versy over this judgment.

Three days before this judgment was rendered U. M. Beck, the president of the company, received from the agent in Virginia, on whom the notice was served, the copy of the notice served on him. It was then too late to call a meeting of the directors, as the by-laws of the company required three days notice of such meeting; but he saw, or talked over the telephone to, a majority of the directors, and they advised him, or assented to a suggestion from him, to go to Virginia and do whatever was best to protect the interest of the company and of himself and Mr. Beedle, to whom the company was indebted. This indebtedness was for money which had been advanced to make the cash payment on the Semones, tract, and certain development expenses, and Beck and Beedle held the notes of the company for the amounts advanced by them respectively.

The company at that time had no assets except the tract of 474.25 acres, and owed no debts except to Semones, Beck and Beedle, but the land was not of sufficient value to pay all three of them. Then began the struggle of Beck and Beedle to get priority over the judgment to be rendered on December 12, 1923, in favor of Semones' executor.

Beedle had died but had no personal representative in this State. Beck set out at once for Virginia, bring-ing with him the notes which had been executed by the company to him and to Beedle, respectively, and upon arrival employed counsel, and began active prepara-tions to secure judgments in favor of himself and of Beedle's estate against the company before judgment could be rendered in favor of Semones' executor upon the notice he had served on the company.

A resident of the State was appointed personal repre-

sentative of Beedle's estate on December 11, 1923. On the same date (the day before judgment was to be rendered in favor of Semones' executor), U. M. Beck appeared by counsel in the Corporation Court of the city of Roanoke and presented a notice of motion for a judgment against the said Blue Ridge Metals Corporation, and "moved the court to docket his motion for judgment against the defendant, and to permit him to file in open court his written notice of said motion, returnable to this date." Thereupon the following proceeding was had:

"And thereupon the defendant appeared, by its president, and in open court waived notice of said motion. It is accordingly ordered that said motion be, and the same hereby is, with the consent of the defendant, duly docketed and said notice duly filed.

"And thereupon the said plaintiff, by his attorneys, moved the court for a judgment against the defendant in the sum of $2,592.00, with interest on $2,350.00, a part thereof, from December 2, 1919, and with interest on $242.00, the remainder thereof, from February 25, 1920, due by notes executed by the defendant, payable to the plaintiff. Thereupon the plaintiff was sworn and exhibited said notes, which were duly proved according to law.

"And it appearing to the court that the said notes are not taxable in the State of Virginia, because of the non-residency of the plaintiff, the holder thereof, it is accordingly ordered that the plaintiff have and recover of the defendant the said sum of $2,592.00, with interest on $2,350.00, a part thereof, from December 2, 1919, and with interest on $242.00, the remainder thereof, from February 25, 1920, until paid, together with the costs.

"And it is further ordered, for cause shown, that this

judgment be forthwith docketed and a duly certified abstract furnished the plaintiff."

Similar proceedings, in all respects, were had by the personal representative of Beedle, and a similar judgment was rendered in his favor.

[1, 2] These judgments were assailed in a lien creditors' suit brought by Semones' executor against Blue Ridge Metals Corporation to subject the said tract of 474.25 acres to the lien of his judgment. They were assailed on various grounds, and, amongst them, on the ground that they were obtained by fraud, and that the Corporation Court of the city of Roanoke never acquired jurisdiction in those cases over the person of the defendant.

The allegation of fraud in the procurement of the judgments is not sustained by the evidence. There was no evidence of actual fraud, but the plaintiffs in those judgments, if valid, obtained priority over Semones' executor for the satisfaction of their debts. This was not *per se* fraud. A corporation, though insolvent, may give preference to one or more of its creditors over others, if it acts in good faith, with no fraudulent intent. *Planters Bank* v. *Whittle,* 78 Va. 737, and cases cited.

[3, 4] It remains to inquire whether the court acquired jurisdiction over the defendant corporation so as to render personal judgments against it. The record shows that "the defendant appeared by its president," without showing who that president was, and it is argued that this fact cannot be shown by parol, and that, even if it could be, it would not invalidate the judgment; that the judgments cannot be collaterally assailed.

It will be observed that no attack is made on the absolute verity of the record, but parol evidence was

offered to explain a latent ambiguity in the record itself. Everything in the record is admitted to be exactly true as therein stated, and the offer was, not to vary, alter or contradict it, but to show the circumstances under which the judgments were entered. It is said in the opening brief for the appellant that "it was physically impossible for Beck to have concealed from the court the capacities in which he undertook to act." The fact that Beck was, at the date of the judgments, president of the defendant company was the only fact sought to be shown by the parol evidence, and as this fact in no wise impugns the verity of the record, it was permissible to show it.

But it is said this was a fact known to and determined by the trial court, and hence is not subject to collateral attack. The appellant's position is that if the record had recited that "defendant appeared by U. M. Beck, its president," the judgments would not have been subject to collateral attack. They cite in support of their position *Irvine* v. *Randolph L. Co.*, 111 Va. 408, 69 S. E. 350; *White* v. *Crow* (C. C. A.), 17 Fed. 98, 110 U. S. 183, 4 S. Ct. 71, 28 L. Ed. 113; *Farant Invest Corpn.* v. *Francis*, 138 Va. 417, 128 S. E. 141. But none of these cases involved the question here at issue. While there are expressions in some of the cases favorable to appellant's views, in none of them was the plaintiff in the case an officer of the defendant corporation upon whom the process was served, or who confessed the judgment.

[5] When an officer of a corporation, either in his own right or as agent for another, sues the company of which he is the officer, he abandons for the occasion his position as officer and cannot commence an action against the company by service of process upon himself as officer. This would be simply service of process upon the plaintiff instead of upon the defendant. If this could be

done and the judgment rendered thereon could not be collaterally assailed, it would open the door to the grossest fraud, and subvert the orderly administration of justice.   Where the relation of the officer served to the plaintiff is such as to make it to his interest to suppress the fact of service, service cannot be made upon such officer, although he is within the terms of the statute designating those upon whom service may be made.

In *Buck* v. *Ashuelot Man. Co.*, 4 Allen (Mass.) 357, an action was instituted by Buck, the president of the defendant company, and the service was on Buck.   It was said in the opinion: "Upon inspecting the writ in the present case, it appears by the officer's return that the only service made upon the defendants was by leaving an attested copy of the writ with Bushrod Buck, the plaintiff in the action.   This mode of service is said to be authorized by Rev. Sts., c. 90, sec. 43, in which it is provided that the service upon the corporation therein named may be made by leaving a copy of the writ 'with the clerk, cashier, secretary, agent, or any other officer having charge of their business, and if there be no such officer found in the county, the service may be made on any member of the corporation.'   The officer here certifies that he 'did not find a clerk, secretary, agent or any other officer having charge of the business of the within named Ashuelot Manufacturing Company, within my precinct; I therefore left an attested copy of the writ with Bushrod Buck, the president and a member of said Ashuelot Manufacturing Company.'

"A service thus made by giving a copy of the writ to the plaintiff was to no essential purpose a service on the corporation as defendant.   The action might as well have proceeded without any service of the writ as on one of that character.   The plaintiff had notice of the action, because he instituted it.   The notice, to be ef-

fective, must be a notice to an adverse party. If there was no other agent or officer of the corporation except the plaintiff, it would seem to be the proper course to serve the process on some member of the corporation, and that member some other person than the plaintiff."

In *George* v. *American Ginning Co.*, 46 S. C. 1, 24 S. E. 41, 32 L. R. A. 764, 57 Am. St. 671, two actions were instituted against the defendant company, one by W. C. Brown, and the other in the name of George for whom Brown was attorney in fact. In each the process was served on W. C. Brown, treasurer of the defendant company. In each case there was a judgment by default against the defendant company, which was set aside for invalid service of process. In the course of the opinion it is said: "The question thus resolves itself into an inquiry whether a person can legally commence an action against a foreign corporation of which he happens to be an officer, or agent, by serving himself with the process or summons necessary to commence such action. So far as we are informed, there is no authority in this State upon the point, and we do not think any is needed to show that such a proposition, so utterly at variance with any proper conception or view of the orderly administration of justice, cannot for a moment be entertained. To concede such a proposition would open the door to the grossest fraud which would be a reproach to the administration of justice."

*Atwood* v. *Sault Ste., &c., Co.*, 148 Mich. 224, 111 N. W. 747, 118 Am. St. Rep. 576, was an action on an account for $1,875.00, for personal services alleged to have been rendered by John N. Goltra to the defendant company. The declaration alleged that Goltra had assigned his claim to Frank B. Atwood, in whose name the action was brought. The return of the sheriff shows that service was made upon the defendant company by deliver-

ing a copy of the declaration to John N. Goltra, secretary and assistant treasurer of the defendant corporation. No appearance was entered by the defendant and judgment was entered by default for the plaintiff. A writ of error was sued out and defendant assigns as error that the service was invalid for the reason that the claim sued upon being one assigned by Goltra, service on him was unauthorized. The court said: "The plaintiff contends that the record does not sufficiently show that John N. Goltra, who was served, is the same John N. Goltra who assigned the claim sued on. We think, however, that the identity is *prima facie* established by the identity of names. 6 Enc. of Ev. 913. John N. Goltra was an officer of the company upon whom the service could be made under the statute. But it is established by authority—if authority for rules so manifestly just were needed—that even though the person is within the terms of the statute, if his relation to the plaintiff or the claim in suit is such as to make it to his interest to suppress the fact of service, such service is unauthorized. *Buck* v. *Ashuelot Mfg. Co.*, 4 Allen (Mass.) 357; *St. Louis, &c., Min. Co.* v. *Edwards*, 103 Ill. 472.

"It is insisted, however, that as the claim of Goltra had been assigned before service was made upon him, he was at the time of the service disinterested. There is nothing of record, except the statement that the amount was assigned, to show the nature of the contract of assignment. We think that in such a case there is a *prima facie* presumption that there was an implied warranty that the chose in action, which was the subject of contract, existed in fact. 2 Am. & Eng. Enc. of Law (2d ed.), p. 1090.

"It follows that Goltra had an interest in the claim in suit adverse to the defendant and that service upon him was unauthorized. See *White House Mountain Gold Min. Co.* v. *Powell*, 30 Colo. 397, 70 Pac. 679."

[6, 7] It is true that in each of the cases cited the question arose on direct appeal, but the main point decided in each case was that the service was invalid. If invalid, then the court never acquired jurisdiction of the defendant, and the judgment was void.

It is conceded by all the authorities that if a judgment is void, it may be assailed anywhere, at any time, in any way, by anybody. It is immaterial whether the assault be direct or collateral. It is a nullity and may be treated as such. In the instant case, when the ambiguity in the judgment is explained, the record itself shows that Beck, the plaintiff in one case, and the agent of the plaintiff in the other, was also the president of the defendant company and as such entered appearance for the defendant. The want of jurisdiction over the defendant thus affirmatively appears from an inspection of the record itself, after the ambiguity is removed, and hence renders the judgment void.

[8] If it be true that neither of the actions could have been lawfully commenced by service of process on U. M. Beck, as president of the company, or upon appearance for the company entered by him, then the fact that the trial court decided that such service or appearance was valid could not make it so. If the service or appearance was illegal, a decision of the trial court to the contrary could not make it legal. If such were true, then the trial court could never, under any circumstances, enter a void judgment.

[9] There are many cases in which the trial court has adjudged that it had jurisdiction of the subject matter and of the parties but did not, and yet its judgment has been held to be void and subject to collateral attack. *Windsor* v. *McVeigh*, 93 U. S. 282, 23 L. Ed. 914; *Thurman* v. *Morgan*, 79 Va. 367; *Anthony* v. *Kasey*, 83 Va. 338, 5 S. E. 176, 5 Am. St. Rep. 277.

[10, 11] Where it is sought to enforce in one State a judgment rendered in another State, the jurisdiction of the court rendering the judgment may be assailed collaterally. *Bowler* v. *Huston*, 30 Gratt. (71 Va.) 726, 32 Am. Rep. 673. But generally the rule is otherwise as to domestic judgments. The common law rule relating to the verity of the record is followed in a majority of the States, and is thus stated in 15 R. C. L. 893, sec. 373: "According to the common law rule, adhered to at the present time in most of the States, the presumption in favor of the jurisdiction of the court of general jurisdiction is conclusive and its judgment cannot be collaterally attacked where no want of jurisdiction is apparent of record. Whenever the record of such a court is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that whatever ought to have been done was not only done but that it was rightly done. So, where a judgment contains recitals as to the jurisdictional facts, these are deemed to import absolute verity unless contradicted by other portions of the record. Consequently, such a judgment cannot be collaterally attacked in courts of the same State by showing facts *aliunde* of the record, although such facts might be sufficient to impeach the judgment in a direct proceeding against it. The validity of the judgment, when collaterally attacked, must be tried by an inspection of the judgment roll alone, and no other or further evidence on the subject is admissible, not even evidence that no notice had been given." See also *Schultz* v. *Schultz*, 10 Gratt. (51 Va.) 358, 60 Am. Dec. 335; *Lancaster* v. *Wilson*, 27 Gratt. (68 Va.) 624; *Irvine* v. *Randolph L. Co.*, 111 Va. 408, 69 S. E. 350.

[12] The same rule is generally applied to erroneous findings of jurisdictional facts, by domestic courts of general jurisdiction, but there are a number of courts

of the highest respectability that take the view that the rule does not apply to questions of jurisdiction of the court rendering the judgment. The view that the question of jurisdiction is subject to collateral attack is strongly put by Rapallo, J., in *Ferguson v. Crawford*, 70 N. Y. 253, 26 Am. Rep. 589. See also *Atwood v. Tucker*, 26 N. D. 622, 145 N. W. 597, 51 L. R. A. (N. S.) 597; *Peoples Savings Bank v. Wilcox*, 15 R. I. 258, 3 Atl. 211, 2 Am. St. Rep. 894; 1 Black on Judgments (1st ed.), section 275, and cases cited; 15 R. C. L. p. 841.

On this question we have no case directly in point. In *Gray v. Stuart*, 33 Gratt. (74 Va.) 351, 358, it is said: "Want of jurisdiction, or fraud in the procurement of a judgment, may be shown in any case and when established will, in any court, invalidate the judgment; but nothing else will, when relied upon in another suit, which brings into question collaterally the judgement of a court of competent jurisdiction. *Lancaster v. Wilson*, 27 Gratt [68 Va.] 624, and cases there cited.

In *Staunton Perpetual B. & L. Co. v. Haden*, 92 Va. 201, 206, 23 S. E. 285, 287, it is intimated that the want of jurisdiction may be raised collaterally. It is there said: "It is claimed, however, upon the authority of *Goolsby v. St. John*, 25 Gratt. [66 Va.] 146, in cases of which that may be considered the type, that the validity of a judgment cannot be inquired into or impeached in a collateral proceeding, but that it can only be attacked directly in the mode provided by the statute. If that be the only mode by which the effect of barred judgments can be obviated (which, with all respect to the authority of the case referred to, we by no means concede), they may be the objects of the grossest wrong and injustice. The statute relied upon in *Goolsby v. St. John* is available only to the parties to the judgment, therefore, the reasoning upon which that

case rests is inapplicable to third persons whose rights may be imperiled or indeed destroyed by such a judgment. The relief in that case was denied because the party to the judgment had an adequate remedy at law, and it is admitted in the opinion that relief in equity could have been invoked had not the remedy at law existed."

There are other cases in this State bearing on the question, but not deciding it. Some of them seem to take a different view. In addition to those already cited, see *Finney* v. *Clark*, 86 Va. 354, 10 S. E. 569; *Justice* v. *Georgia Industrial Co.*, 109 Va. 366, 63 S. E. 1084; *Neale* v. *Utz*, 75 Va. 480; *Wilcher* v. *Robertson*, 78 Va. 602; *Robinett* v. *Mitchell*, 101 Va. 762, 45 S. E. 287; 99 Am. St. Rep. 928; *Alniss* v. *Saunders*, 113 Va. 208, 74 S. E. 153; *Saunders* v. *Terry*, 116 Va. 495, 92 S. E. 68; *Rhea* v. *Shields*, 103 Va. 305, 49 S. E. 70; *Shelton* v. *Sydnor*, 126 Va. 625, 102 S. E. 83; *Farant Invest. Co.* v. *Francis*, 138 Va. 417, 122 S. E. 141. In the last mentioned case, in commenting upon *Walker* v. *Page*, 21 Gratt. (62 Va.) 636, it is said: "Speaking of what an infant may do on arriving at age to entitle him to vacate a decree of sale of his property, in such a suit, made while he was an infant, the court in its opinion said this: 'He may show error upon the face of the record; or he may show that the court had no jurisdiction to enter the decree; or, if it had jurisdiction, that the proceedings were irregular and not binding upon the parties, or he may show that the case made by the record did not warrant the decree. But whatever cause he may properly show, he certainly cannot re-open the case, and introduce evidence to contradict that already given and acted upon by the court that entered the decree.' "

In the view we take of the case, it is unnecessary to

decide whether the want of jurisdiction of a domestic court to render a judgment can be raised collaterally. We are of opinion that it is permissible to show by parol that U. M. Beck, who entered appearance for the defendant in his own action against it, was the president of the defendant company. This is entirely consistent with the record, and simply puts into this record a fact which it was "physically impossible for Beck to have concealed from the court" which rendered the judgment. That fact is thus read into the record of the judgment, and we are thus permitted to know the fact which the trial court knew and upon which it based its judgment, and, knowing this fact, to determine the validity of its judgment.

[13] It is conceded that the form of the judgments assailed was prepared by counsel for the plaintiffs therein, and the unusual course of omitting the name of the president of the defendant company was apparently intentional. While process may properly be issued against a corporation, it must be served on a natural person, for it cannot be served on that invisible, intangible entity called a corporation, and the return should show the person on whom it is served. It is doubtful whether or not it is sufficient to show that service was on the president" of the defendant, without showing the name of the person filling that office. It may well be doubted, therefore, whether the appearance of the defendant by "its president," without disclosing his name, was sufficient. Conceding its sufficiency, however, on this collateral attack, we cannot permit the failure to state in the judgment what should have been stated therein to validate the judgment and this may now be shown without in any way impugning the verity of the record.

[14] We adhere to the former decisions of this court

on the subject of the verity of records and their freedom from collateral attack, and do not think that the decision of the instant case, permitting proof of the name of the president of the defendant company, under the circumstances of the case, is any departure therefrom, but, if it is such a departure, the instant case must be considered as an exception to the general rule.

[15] The only authority Beck had was the personal assent of a majority of the persons composing the board of directors of the company to do whatever was necessary to protect the interests of the company and of Beck and Beedle. This was not official action of the board and hence was not sufficient to warrant the action taken by Beck, and what he did was not at all to the interest of the company. 7 R. C. L., p. 439, sec. 427.

[16] It is said, however, that the action of Beck was ratified by resolution of the board of directors adopted after the judgments were rendered. This was wholly unavailing. In order to render the judgments valid it was necessary that Beck should have had authority to act at the time the judgments were rendered. No subsequent action of the board of directors could confer jurisdiction upon the court if it did not exist when the judgments were rendered. If the defendant was not legally before the court when the judgments were rendered, the judgments were void.

[17] Objection was made to the judgments because the notice was not served fifteen days before the return day and was not returned to the clerk's office within five days after service, as required by section 6046 of the Code. These provisions were entirely for the benefit of the defendant and could be waived. If the appearance was proper, it was a waiver of process and a return thereof. Burks Pl. & Pr. (2d ed.), sec. 177; *Norfolk & W. R. Co.* v. *Sutherland*, 105 Va. 545, 54 S. E. 465; *Lake*

*Bowling Alley* v. *Richmond*, 116 Va. 429, 82 S. E. 97; *Supervisors* v. *Proffit*, 129 Va. 9, 13, 105 S. E. 666.

The judgment in favor of Beedle's Admr. stands on the same footing as the judgment in favor of Beck. Beck was the agent of Beedle's estate and brought the bonds due Beedle with him from Pennsylvania to Virginia for the purpose of securing a preference in favor of Beedle's estate over the debt of Semones. He was the moving spirit in securing, or attempting to secure, such preference. *George* v. *American Ginning Co., supra.*

We find no error in the decree of the trial court.

*Affirmed.*