## CIRCUIT COURT OF FREDERICK COUNTY

Verlabelle Adams et al.

v.

Virginia Department of Taxation

December 14, 1987

Case No. (Law) 4504

By JUDGE ROBERT K. WOLTZ

The dispute here is presented by an application of the plaintiffs under Code § 58.1-1825 asserting that they are aggrieved by state sales tax assessments for a period, as limited by that section, of three years prior to making the application. The plaintiffs, presumably wife and husband, state that they have received food stamp coupons in the approximate amount of $147 monthly during that period of time. Their complaint is in purchasing food with these stamps they have been assessed and have paid sales tax. They point out that Sales and Use Tax Regulation 630-10-112 in effect at the time provided that the Virginia sales tax applied to food purchases made with food stamps. They seek under § 58.1-1826 refund of $221.68 representing erroneously paid sales tax on food so purchased. I find that the application for refund should be denied.

Though not presented by the pleadings, a jurisdictional question as to monetary amount of the claim arises. The court raises this issue on its own motion for settlement now for if the court has no jurisdiction its judgment

would be void and, "It is conceded by all authorities that if a judgment is void it may be assailed anywhere, at any time, in any way, by anybody." *Beck* v. *Semones' Admr.*, 145 Va. 429 (1926).

Section 16.1-77 delineating the jurisdiction of general district courts grants: "Exclusive original jurisdiction of any claim. . . to any debt, fine or *other money* which would be recoverable by action at law or suit in equity, when the amount of such claim does not exceed one thousand dollars. . ." (Emphasis added). § 58.1-1825 under which this proceeding is brought provides that any person "aggrieved" by an assessment "may. . . apply to a circuit court for relief." Section 16.1-77(1) in regard to monetary claims also mentions damages for breach of contract, injury done to real or personal property and injury to the person. If "other money" were to extend broadly to all monetary claims within the jurisdictional amount, then the language regarding contract damages and property and personal injuries would be surplusage. A basic principle of statutory construction is that statutes are to be construed harmoniously and not in conflict with one another. Some assistance in resolving the problem is afforded by applying the *ejusdem generis* rule to the words "any debt, fine or other money" found in § 16.1-77(1). The *ejusdem generis* rule is well stated in Black's Law Dictionary (3rd Ed.) as follows:

> [W]here general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. (Citations omitted)

More importantly the district court jurisdiction applies only to such money as is "recoverable by action at law." Plaintiff's case is not an action at law but a special statutory proceeding. For these reasons I find there is no conflict between the statutes and that the court does have jurisdiction.

The Virginia Retail Sales and Use Tax Act (§§ 58.1-600 through 58.1-638) is a "license or privilege tax on sellers

at retail" (and certain others). § 58.1-603. As applied to retailers the license tax is measured by a percentage "of the gross sales price of each item or article of tangible personal property when sold at retail or distributed in this State." *Id*. This license tax is to be collected from, in effect passed on to, the purchaser, § 58.1-625; and generally the seller is required to pass the tax on to the buyer, § 58.1-626. The seller is in effect an agent of the Tax Commissioner for collecting and transmitting the amounts due under the Act. § 58.1-615.

I am of opinion that it is unnecessary to investigate the esoteric niceties in the constitutional sense of direct and indirect taxes or distinctions between duties, imposts, excises and customs, as to which *see generally Hylton v. United States*, 3 Dall. (3 U.S.) 171 (1796), overruled by *Pollock v. Farmer's Loan & Trust Co.*, 158 U.S. 601 (1895), leading to the adoption of the Sixteenth Amendment to the United States Constitution; *Pacific Insurance Co. v. Soule*, 7 Wall. (74 U.S.) 433 (1869), and W. Blackstone, Commentaries on the Laws of England, vol. 1, ch. 8, concerning the king's revenue. Suffice it to say whether the tax be on the privilege of conducting a retail business or on sales transactions occurring in that business or on the items themselves sold at retail, that it is not a tax on the food stamps. Essentially the question must be resolved under Article VI, Section 2, the supremacy provision of the United States Constitution, by divining congressional intent. The plaintiffs pitch their claim upon 7 U.S.C. 217(b) which read as follows:

> *Income or resources.* The value of the [food stamp] allotment provided any eligible household shall not be considered income or resources for any purpose under any Federal, State, or local laws, including, but not limited to, laws relating to taxation, welfare, and public assistance programs, and no participating State or political subdivision thereof shall decrease any assistance otherwise provided an individual or individuals because of the receipt of an allotment under this Act.

They maintain that contrary to this provision Virginia considers food stamps, "income or resources" for a purpose relating to taxation, that is the Virginia retail sales tax.

Admittedly requiring payment of a sales tax in relation to food purchases does reduce purchasing power, but the quoted section does not speak to that. Rather the income or resources provision vis-a-vis taxation prohibits consideration of food stamps in the calculation or assessment of any sort of income, receipts or net worth tax; and our sales tax is not one such. This is further reinforced by the provision that food stamps shall not be considered in relation to "welfare and public assistance programs," and that no assistance otherwise received shall be decreased because of receipt of food stamp allotment. In effect the statute provides that food stamps themselves shall not be the subject of or cause of any increase in taxation or reduction in welfare assistance.

The legislative history of the food stamp program before, during and after the plaintiffs' claim arose confirms the foregoing. The code section was adopted in 1977 as a part of Pub. L. No. 95-113, as to which *see* comments of Congressman Jeffords that "unfortunately, the bill does not include a provision *offered by Representative McHugh, and approved by the subcommittee*, which would prevent the imposition of State sales taxes on food stamp purchases." *123 Cong. Rec.* 29674 (1977). (Emphasis added) Thus it appears that exempting food stamp purchases from sales taxes was considered but rejected by Congress.

Subsequent to adoption of the law, state or local sales taxes were applied to food stamp purchases in twenty States and it was estimated that food stamp recipients lost one hundred fifteen million dollars annually in food purchasing power because of those taxes. *See* Report of the Committee on Agriculture, H. R. Rep. 99-271, Part 1, 99th Cong., 1st sess. at p. 140 (September 13, 1985). In 1985 Congress passed § 1505 of the Food Security Act which added at the end of 7 U.S.C. § 2013(a) the following:

> [E]xcept that a State may not participate in
> the food stamp program if the Secretary determines
> that State or local sales taxes are collected

within that State on purchases of food made with coupons issued under this Act.

But amendment further provided that this new prohibition would not become effective until those States which imposed sales tax on food stamp purchases could enact legislation abolishing that imposition.

Certainly Congress would not have gone through the legislative processes to forbid something which was already forbidden. Plaintiffs point to the report of the Committee on Agriculture, S. Rep. 99-143, 99th Cong., 1st sess. at p. 252, which states, "Additionally, the States' authority to tax such [food stamp] benefits has never been legislatively sanctioned. . ." as a basis for voiding the sales tax on food stamp purchases and entitling plaintiffs to a refund. The error in this argument is the equation of failure to sanction a thing with prohibition of that thing. The remainder of the last quotation is, "and States remain free to reject this condition [no sales tax on food stamp purchases] to participation in the Food Stamp Program and forego the benefits of the program to its citizens."

Thus in consideration of the prohibitory amendment of 1985 found in the code section above there is clear indication that prior to the effective date of the amendment no prohibition against imposition of state sales taxes on food stamp purchases existed. Even under the amendment there is no express prohibition making the practice contrary to law, but simply use of the now familiar congressional "carrot-stick" approach of denying participation in the food stamp program in those States which impose taxes on purchases of food with food stamps. The taxes sought to be recovered by the plaintiffs were paid voluntarily by them. This does not prevent recovery of erroneous assessments against them. *Cf. Hotel Richmond Corp. v. Commonwealth*, 118 Va. 607 (1916). Judgment nevertheless must be granted in favor of the defendant as the plaintiffs have failed to show as a matter of law that the sales tax assessment was erroneous, which is a prerequisite to obtaining refund of taxes paid under that assessment.