## CIRCUIT COURT OF FREDERICK COUNTY

Commonwealth of Virginia

    v.

Joe Allen Thompson

November 30, 1987

Case No. Cr. 3987

By JUDGE ROBERT K. WOLTZ

In this prosecution under Code § 46.1-387.8 for operating a motor vehicle after being adjudicated an habitual offender under the procedures provided in §§ 46.1-387.3 to 46.1-387.6, the defendant by motion to dismiss collaterally attacks that adjudication as being void. The motion further asserts that he had no notice of the adjudication and so lacked knowledge of his status as an habitual offender.

The basis for the first attack is that the defendant was in the adjudication case proceeded against under Section 46.1-387.5 as a nonresident when at the time he was a resident. An adjudication under those circumstances is void and can be collaterally attacked successfully. *Slaughter v. Commonwealth*, 222 Va. 787 (1981). The order of the Circuit Court of the City of Richmond, where nonresidents are proceeded against, adjudicating him an habitual offender was entered in October, 1978, and the indictment in this case was returned at the August term, 1981. Actual prosecution was delayed because of the defendant's being

a fugitive. At an evidentiary hearing, the defendant testified as to his place of residence at the time of the adjudication proceeding and in the years immediately preceding and following. No purpose would be served in reviewing his testimony, but it was wholly without corroboration, confused, and at times inconsistent.

On the other hand, the Commonwealth points to an abstract of conviction for traffic offense in Virginia in 1978 in which his address is listed as Bristol, Tennessee, and introduced an arrest record of the police department of that city (not objected to) of May, 1978, also giving his residence as Bristol, Tennessee. Even the defense represents that under a previous adjudication proceeding instituted in Warren County in 1977 against the defendant as a resident, no less than four times service of process was returned "not found." The burden was on the defendant to sustain his motion to dismiss on his claim of residency. This he has failed, particularly in view of the evidence of the Commonwealth, to do. So the motion to dismiss on that ground is denied.

The defendant's further claim is that he had no notice of his adjudication as an habitual offender until arrested for driving after being adjudicated such. His testimony was explicit and uncontradicted. Only by speculating on the circumstances would a determination be made that he knew of his prior adjudication at the time of his arrest. I find that at the time of the arrest he had no actual knowledge of having been adjudicated an habitual offender. Consequently, though there was little argument and no citation of authority on this point, I sustain the second part of the motion to dismiss for the reasons appearing below.

Perhaps no concept is more anciently embedded in Anglo-American jurisprudence than that of "the law of the land." Those words first appear in chapter 39 of the original Magna Carta wrested from the king by his barons at Runnymede in 1215:

[N]o free man shall be taken or imprisoned or disseised or exiled or in any way destroyed, nor will we go upon him nor send upon him, except by the lawful judgment of his peers or by the law of the land.

The phrase appears in successive Great Charters in England and found its way into that portion of the Declaration of Rights of the Virginia Constitution [1776] dealing with the rights of the accused in criminal prosecutions to the effect that, "He shall not be deprived of liberty except, by the law of the land. . ." *Life or* was not inserted before *liberty* until 1902, but otherwise the provision has remained the same since 1776. A. Howard, Commentaries on the Constitution of Virginia 123 (1974 ed.).

From thence and from colonial charters, the phrase in its criminal contest spread to the early constitutions of seven other of the original thirteen States. *Id.*, page 122, note 163; The Constitution of the United States of America Analysis and Interpretation 1139 (Senate Doc. 92-82, 92nd Congress). As transmuted into "due process of law," it appeared in the Fifth and Fourteenth Amendments to the United States Constitution. The latter phrase, also found in Article I, § 11, of our Constitution [1971], first appeared in "a statutory rendition of this [Magna Carta] chapter in 1354." *Id.* at page 1138. The two phrases are synonymous as found by no less authority than Coke in his Institutes of the Laws of England, Part II, 50-51. *Id.* and A. Howard, *supra*, at page 120. Their equivalency has been reaffirmed as recently as *Klimko v. Virginia Employment Commission*, 216 Va. 750 (1976).

Within the concept of the law of the land, perhaps no principle is more basic to the protection of the liberties (and property) of the people from actions by the sovereign than that of notice. The constitutional requirement for adequate notice is subsumed in the term "procedural due process," which though not without niceties and subtleties in application is objective in nature. In that respect, it can contrast to "substantive due process," the application of which may at times be governed by the vagaries of the individual judicial mind. Despite fine distinctions which may be made, in essence the requirement of notice is simply this: You shall neither do nor seek to do to me in derogation of my rights until you have first told me what you seek to do so that I may be aware of it and may prepare against it.

The problem of notice in this case will now be examined from three standpoints: Adequacy of notice to the defendant of the law, adequacy of notice to him of the prior adjudicative proceeding and adequacy of notice to him of fact, i.e., the fact that he had been adjudicated an habitual offender.

## I

To the making of laws there is no end. Their variety and multiplicity are staggering. No mind is capable of holding them all, much less holding in comprehension all their meaning, and in truth, the best legal minds often differ in understanding of them in particular instances. Yet out of necessity for the integrity of the law itself and for the preservation of society, the handmaiden of which the law is, the largest and possibly the most practically required of legal fictions has been erected. This is, and especially in the criminal law, that every person of mental discretion, however untutored in legal learning, is presumed and is bound to know the law. Though it may in circumstances mitigate, ignorance of the law, so the adage goes, is no excuse. As put by W. Blackstone, IV Commentaries on the Laws of England 27 (1969 ed.):

> For a mistake in point of law, which every person of discretion not only may, but is bound and presumed to know, is in criminal cases no sort of defense. *Ignorantia juris, quod quisque tenetur scire, neminem excusat* [Ignorance of the law, which everyone is bound to know, excuses no man], is as well the maxim of our own law, as it was of the Roman.

Even so, the law of the land would seem to require notice of the law. Practically, the notice in many instances is constructive only, but at least what exists merely in the recesses of the official mind will not qualify as law. Many constitutional and statutory provisions ensure that at all levels of government, notice of what is the law will be given to the governed, which coincidentally inhibits arbitrary action by the governor. For example, see the Virginia Register Act, Code §§ 9-6.15

*et seq.* and similarly the Federal Register Act, 44 U.S.C. sects. 1501 *et seq.* and similarly the Federal Register Act, 44 U.S.C. §§ 1501 *et seq.* and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* regarding publication of executive orders and administrative regulations in the Federal Register, the establishment of which likely resulted from the case of *Panama Refining Co. v. Ryan*, 295 U.S. 388 (1935).

In the criminal field, my researches have disclosed only one breach in the principle that one is bound to know the law, *Lambert .v. California*, 355 U.S. 225 (1957). There the defendant was convicted under a municipal ordinance requiring anyone convicted of a felony living within the municipality to register within a limited time with the police. The court assumed the defendant had no actual knowledge of this provision. While acknowledging "[t]here is a wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition," it overturned the conviction on the basis that the defendant's conduct was wholly passive -- mere failure to register. Acknowledging further that "ignorance of the law will not excuse" as a fundamental legal principle, it held that consistent with due process, the defendant could not under the circumstances be convicted for passive conduct unless failure to register were accompanied by actual knowledge or the probability of knowledge of the requirement. The dissent felt "confident that the present decision will turn out to be an isolated deviation from the strong current of precedents -- a derelict on the waters of the law."

I find no difficulty in application of the general rule to this case. The defendant is, even should it be only constructively, on notice of both the civil and criminal laws of the Commonwealth as to habitual offenders. He is charged with the underlying policy and purpose of these statutes, § 46.1-387.1; the definition of an habitual offender, § 46.1-387.2; the procedures, including those with respect to nonresidents, and evidentiary provisions whereby one may be found to be an habitual offender, Sections 46.1-387.3 to 46.1-387.6; as well as the criminal sanctions applicable for violation of the adjudicatory order, both as to the elements of the crime and its punishment, § 46.1-387.6.

## II

The proceeding against the defendant to declare him an habitual offender was a civil one. *Huffman v. Commonwealth*, 210 Va. 530 (1970); *Davis v. Commonwealth*, 219 Va. 808 (1979), and *Shope v. Commonwealth*, 228 Va. 203 (1984). That proceeding itself imposes no criminal punishment on the defendant nor even so much as a personal judgment against him. It results only in imposing a civil disability. *Whorley v. Commonwealth*, 215 Va. 740 (1975), and *McClure v. Commonwealth*, 222 Va. 690 (1981); *see also Ferguson v. Gathright*, 485 F.2d 504, 506 (4th Cir. 1973).

For many years under § 8.01-308 by virtue of operating a motor vehicle in the Commonwealth, persons have been subject to suit for personal judgments by service of process on the Commissioner of the Division of Motor Vehicles as their statutory agent for service of process. If service on the Commissioner[1] is sufficient process on a nonresident on which to found a personal judgment, *a fortiori* such process is sufficient basis for a valid judgment merely declaring the status of a nonresident defendant vis-a-vis his use of our highways. Whether it would be competent for the General Assembly simply to say that conviction of three of the required type offenses would *ipso facto* constitute one an habitual offender and so subject to criminal sanctions for again driving on the highways is not at issue. In contrast to *Lewis v. United States*, 445 U.S. 55 (1980), where mere conviction of a felony without more subjected the felon to prosecution and conviction for possession of a firearm, our law, out of full deference to the individual, requires process, hearing and formal adjudication as an habitual

[1] The General Assembly perhaps being concerned that the Commissioner who initiated habitual offender proceedings was also the statutory agent for service of process substituted the Secretary of the Commonwealth as that agent two years after the defendant's adjudication. Acts 1980, c. 568. The same amendment omitted reference to orders of publication, and as to residents specifically provided that the process be by actual personal service on the individual as provided in Section 8.01-296(1).

offender before future criminal sanctions for operating a motor vehicle can be applied.

The defendant was a nonresident at the time the declaratory proceedings were had against him. The authorized process against him was constitutionally valid. Execution of process was regular in accordance with the statute. Pursuant to that process, hearing was had and on it he was duly adjudged an habitual offender. That he is such is incontrovertible.

### III

As noted above, the existence of three qualifying convictions standing alone is not enough to subject a person to conviction for thereafter operating a motor vehicle. He must first, by the procedures already mentioned, be found to be an habitual offender before those consequences will result. The papers of the adjudicatory proceeding are an exhibit in this one, and that record shows mailed process to commence the proceeding had been returned undeliverable because of "Addressee unknown. No such number."

Thus the defendant had no actual notice that an habitual offender civil proceeding had been commenced against him, though the procedure being regular, the adjudication was valid. Having no notice of the proceeding, no knowledge of its outcome can be imputed to him. There is no statutory provision for giving notice to a nonresident that he has been found an habitual offender. As determined in this case, he had no actual knowledge of the fact until his arrest. Obviously, he had knowledge of his qualifying convictions, and having notice of the law, he must have known that civil habitual offender proceedings could be instituted against him and that he could be adjudicated one. He was also on notice that if found one, criminal penalties would be incurred by his operation of a motor vehicle thereafter on the highways of the Commonwealth. But his knowledge of what could have happened and what in fact did happen are different matters.

The legislature did not declare any three qualifying convictions will automatically constitute one an habitual offender. It has provided otherwise, by erecting a somewhat elaborate procedure as a prerequisite to being found

an habitual offender before the criminal sanction can be invoked. I conclude that while this crime may be only *malum prohibitum*, under the facts of this case a *mens rea*, a guilty mind, willfulness, a violative intent is required before the crime is committed. A knowledge of the law is not enough; knowledge of the fact that he was in violation is necessary.[2]

So the defendant here was ignorant of the fact that he had been declared an habitual offender, and the necessary willfulness to violate the law was not present. As put by Blackstone in his discussion of ignorance of the law cited above,

> [*I*]*gnorance* or mistake is another defect of will; when a man, intending to do a lawful act, does that which is unlawful. For here the deed and the will acting separately, there is not that conjunction between them, which is necessary to form a criminal act. But this must be an ignorance or mistake of fact, and not an error in point of law.

In support of this approach is *Bibb v. Commonwealth*, 212 Va. 249 (1971). There Bibb attended an administrative hearing to determine whether his license should be suspended or revoked. Statute required that he be given notice if suspension resulted and that certified mailing would be *prima facie* evidence that the notice had been delivered. As a result of the hearing, his driver's license was suspended and notice of that was mailed to him. He had moved shortly before then, and the notice mailed was returned undelivered. While the order of suspension was in effect but of which the defendant had no knowledge, he was convicted of driving while his license was suspended. While the case turned on the question of the mailing being *prima facie* evidence that notice had been delivered when in fact the record showed that it had not been, the Court

---

[2] This knowledge need not always be direct, actual knowledge. For example, if a defendant is duly on notice that an adjudicatory proceeding has been commenced against him, he cannot dismiss the matter and later claim on prosecution that as a result of his ostrich like attitude in violating the law, he was not willful.

did observe, "Since the evidence does not show that Bibb knew his license had been suspended, we must sustain his contention [that he could not be convicted]."

In *Bibb*, I take it that the administrative proceeding was effective to determine the defendant's civil status respecting his motor vehicle operating privileges. He could not be convicted of the criminal act in violation of that status because he had no statutorily mandated notice of his status, and being ignorant of it, "the deed and the will" were not conjoined. So in the present case, though the judicial determination of the defendant's status as an habitual offender is effective for that purpose, his lack of knowledge of his status prevents his conviction of the criminal act in violation of that status.

Finally, the defendant has and has had since his arrest several years ago actual knowledge of his status as an habitual offender This actual knowledge is sufficient, there being no provision by statute for any form of notice to him of the fact. Consequently, he is now at criminal risk under § 46.1-387.8 should he operate a motor vehicle on the highways of this Commonwealth so long as his adjudication as an habitual offender remains in effect and until such time as his operating privileges may have been restored to him under appropriate statutory provisions.