# Richmond

CHARLES WILLIAM WHORLEY v. COMMONWEALTH
OF VIRGINIA.

April 28, 1975.

Record No. 740490.

Present, All the Justices.

*Paul Whitehead, Jr.; F. Guthrie Gordon, III (Lowe & Gordon, Ltd.*, on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

We decide here whether the Commonwealth may rely upon an order adjudging a defendant to be a habitual offender which is based, in part, upon a misdemeanor conviction obtained in the absence of counsel.

On November 4, 1970, action was taken against Charles William Whorley in the Circuit Court of Bedford County under

the Virginia Habitual Offender Act, Code § 46.1-387.6. He was adjudged to be a habitual offender, and this resulted in the revocation of his driver's license for a period of ten years. The defendant was advised that if he were convicted of operating a motor vehicle in Virginia during the period of suspension he could be sentenced to no less than one nor more than five years in the penitentiary.

The decision in Bedford was reached on the basis of Whorley's numerous convictions for violating the motor vehicle laws, including a conviction on September 26, 1969, in the municipal court of the City of Lynchburg, for driving a motor vehicle while under the influence of intoxicants, second offense.

On January 6, 1973, an automobile operated by Whorley was involved in a "hit and run" accident in Campbell County. Investigation disclosed that prior thereto he had been adjudged a habitual offender, and he was charged with having operated a motor vehicle after he had been so adjudged. On January 25, 1974, he was sentenced to serve one year in the penitentiary. The sole defense that Whorley offered at the January 25th trial was that his September 26, 1969 conviction for drunken driving in Lynchburg was null and void because he was not afforded representation by counsel, and he had not waived such representation.

█ Defendant's argument is two-fold. He says that the rule announced by the United States Supreme Court in *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), is retroactive in effect. He also contends that the effect of a retroactive application of *Argersinger* is to void Whorley's September 26, 1969 conviction, and thus to render the 1970 habitual offender adjudication void as having been based upon a void conviction.

In *Argersinger* the court held that: "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U. S. at 37. We apply *Argersinger* retroactively in view of *Berry* v. *City of Cincinnati*, 414 U. S. 29, 30 (1973), where the court announced that:

"Those convicted prior to the decision in *Argersinger* are entitled to the constitutional rule enunciated in that case . . . if they allege and prove a bona fide, existing case or controversy sufficient to invoke the jurisdiction of a federal court."

The effect of *Berry* was to overrule *Potts* v. *Superintendent,* 213 Va. 432, 192 S. E. 2d 780 (1972).

■ Pertinent to our decision here, and closely related to the issue that confronts us, is a series of federal cases in the United States Court of Appeals for the Fourth Circuit and in the United States District Courts for Virginia.

*Marston* v. *Oliver,* 485 F. 2d 705 (4th Cir. 1973), involved a petitioner in a habeas proceeding who was convicted in Virginia of driving a motor vehicle while his driver's license was revoked. He was indigent and was not provided counsel at trial. Upon conviction he received a prison sentence and a fine. As a result of the conviction and his prior record, he was adjudged a habitual offender, and his driver's license was revoked for a period of ten years. The United States District Court ruled invalid the conviction because Marston was an indigent defendant and was not afforded counsel. The case was appealed and decided prior to *Berry.* Judge Russell, in discussing whether the court would give *Argersinger* retroactive application, said:

> "We would not like to be misunderstood. We find no quarrel with the result reached in *Cottle,*[1] where the effect of the uncounseled prior misdemeanor conviction was the automatic and immediate loss of liberty on the part of the defendant. In such a situation, we, too, would find *Argersinger* retroactive. Where we would not give it retroactive application is in those cases, like that here, in which the conviction provides merely the possibility of a basis for a loss of a civil right in a subsequent civil proceeding but involves no warrant for imprisonment and where any retroactive application would result in a substantial frustration of a valuable public policy of barring the public highways to criminally careless drivers who represent a peril and hazard to the traveling public." 485 F. 2d at 710.

---

[1] *Cottle* v. *Wainwright,* 477 F. 2d 269 (5th Cir. 1973). *Argersinger* was retroactively applied to an uncounseled misdemeanor conviction which had been the basis of a parole revocation. In a memorandum decision, *Wainwright* v. *Cottle,* 414 U.S. 895 (1973), the Supreme Court vacated the judgment and remanded the case for further consideration in light of *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973). The Circuit Court of Appeals for the Fifth Circuit remanded the case to permit parole authorities to consider whether particular facts of the parole revocation proceeding required that the parolee have counsel, but the court reiterated that the uncounseled misdemeanor conviction could not be used as a basis for parole revocation. *Cottle* v. *Wainwright,* 493 F. 2d 397 (5th Cir. 1974).

*Ferguson* v. *Gathright,* 485 F. 2d 504 (4th Cir. 1973), decided one day prior to *Marston,* is a case of a habitual offender seeking habeas relief, who also argued that the revocation of his driver's license was invalid for failure of the state, at his revocation hearing, tó furnish him counsel. After exhaustion of state remedies, he filed his federal action. The District Court denied relief, and the Circuit Court of Appeals affirmed. The court held that whether the petitioner was indigent or not, there was no obligation on the part of the state to furnish him counsel at his license revocation hearing. The significance here of *Ferguson* is that the court, again speaking through Judge Russell, observed that there was no loss of liberty from the license revocation for "[i]t is his subsequent defiance of the law, and only indirectly his revocation proceedings, that brings into play the criminal processes and places him in peril of imprisonment." 485 F. 2d at 506.

In *Morgan* v. *Juvenile & Dom. Rel. Ct., Halifax County, Va.,* 491 F. 2d 456 (4th Cir. 1974), decided subsequent to *Berry, supra,* the petitioner was denied habeas corpus relief from a conviction in a state court of the misdemeanor of nonsupport. The court said:

> "Even prospectively *Argersinger* excises from the uncounseled misdemeanor conviction only those consequences, direct or collateral, which relate to loss of liberty or imprisonment. Since Morgan is no longer imprisoned and alleges no collateral consequences placing his continued liberty in jeopardy, even if he was denied counsel at trial and there was no knowing and intelligent waiver of counsel, he is not entitled to habeas corpus relief. . . ." 491 F. 2d at 457.

The defendant Whorley has heretofore unsuccessfully sought relief in the federal courts. United States District Judge Merhige determined that the Virginia adjudication that Whorley was a habitual offender could not "constitute custody" within the meaning of the federal habeas statute. *Whorley* v. *Brillhart,* 359 F. Supp. 539 (E. D. Va. 1973). Thereafter Whorley amended his original complaint to allege and contest his Campbell County conviction, and he was again denied relief. In the case *Whorley* v. *Brillhart,* 373 F. Supp. 83 (E. D. Va. 1974), the court said:

> "The Court of Appeals, which this Court is duty bound to follow, apparently reads *Argersinger* to mean that an un-

counseled misdemeanor judgment of conviction, which results in loss of liberty or imprisonment, is not invalid, *per se*, except as to that part of the judgment resulting in the loss of liberty or imprisonment; consequential civil disabilities are not.

\* \* \* \* \*

"Under the decisions in *Marston, supra,* and *Morgan, supra,* the plaintiff's intervening loss of his driver's license was a valid result of his uncounseled misdemeanor conviction; which, itself, remained valid in all respects, save the term of imprisonment imposed. The license revocation itself having been valid, the conviction thereafter for driving on a revoked license should also be valid. . . ." 373 F. Supp. at 85, 86.

Simultaneously with second *Whorley,* the court announced *Hensley* v. *Ranson,* 373 F. Supp. 88 (E. D. Va. 1974). There Judge Merhige refused to prohibit the Commonwealth from continuing with a habitual offender proceeding, based upon an uncounseled misdemeanor conviction, when there existed only the threatened loss of the petitioner's driving privileges and the "vague possibility" that he might later be arrested for driving after revocation.

In *Mays* v. *Harris,* 369 F. Supp. 1348 (W. D. Va. 1973), Chief Judge Dalton reached a conclusion *contra* to the holdings of the Circuit Court of Appeals and Judge Merhige, and gave full retrospectivity to *Argersinger. Mays* is presently pending on appeal in the Fourth Circuit.

We approve and adopt the conclusion of the Circuit Court of Appeals in *Marston, Ferguson* and *Morgan,* followed by Judge Merhige in *Whorley* and *Hensley,* that *Argersinger* excises from an uncounseled misdemeanor conviction only direct or collateral consequences which relate to the loss of liberty and imprisonment. An uncounseled misdemeanor conviction, although resulting in imprisonment, is not invalid *per se,* and consequential civil disabilities are not invalid.

While *Argersinger* borrowed liberally from *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), the *Gideon* doctrine was not enlarged in its entirety so as to nullify all uncounseled misdemeanor convictions. Throughout its opinion in *Argersinger* the Supreme Court, speaking through Mr. Justice Douglas, reiterated its intent to abrogate not the uncounseled

misdemeanor conviction but the subsequent sentence of imprisonment. We note the following language in the opinion:

"We hold, therefore, that absent a knowing and intelligent waiver, *no person may be imprisoned for any offense*, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." (Emphasis supplied.)

\* \* \* \* \*

"Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that *no imprisonment may be imposed*, even though local law permits it, unless the accused is represented by counsel. . . .

"The run of misdemeanors will not be affected by today's ruling. But in those that end up in *the actual deprivation of a person's liberty*, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's *liberty* is in jeopardy." (Emphasis supplied) 407 U. S. at 37, 40.

Mr. Justice Powell, concurring in the result, referred to the majority opinion and said: "In simplest terms this means that under no circumstances, in any court in the land, may anyone be imprisoned — however briefly — unless he was represented by, or waived his right to, counsel." 407 U. S. at 52. However, Mr. Justice Powell did note that the opinion of the court made a clear distinction between the loss of liberty and other rights.

The Supreme Court of Arizona followed the Fourth Circuit in deciding *State* v. *Sanchez*, 110 Ariz. 214, 516 P. 2d 1226 (1973). It held that a civil revocation of a license pursuant to a state statute may be based upon a conviction for driving while intoxicated obtained as a result of a proceeding in which the defendant was not represented by counsel, and that a person whose license had been thus validly revoked could be convicted for driving while under the influence with a revoked license. *See also State* v. *Zaragoza*, 21 Ariz. App. 596, 522 P. 2d 552 (1974).

■ Virginia's Habitual Offender Act declared it to be the policy of the state to provide maximum safety for all persons using the highways; to deny the privilege of operating motor vehicles to persons who by their record have demonstrated their indifference to the safety of others and their disrespect for the laws of the state and the orders of its courts; to discourage

repetition of criminal acts by individuals; and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.

A reference to the record and to the past conduct of Whorley shows conclusively that he has earned the status of a habitual offender, and that to permit him to resume the use of the public highways would represent a serious hazard to the public.

The privilege of operating a vehicle on the highways of Virginia is granted to those who qualify. It is a privilege that can be withdrawn, revoked or suspended under certain conditions. A proceeding under Virginia's Habitual Offender Act is not a criminal proceeding. It is one designed solely to determine if the past record of an automobile driver is such that he has become a menace on the highways and is a habitual offender. In such a proceeding no fines are imposed, and no loss of liberty is involved. The only result of an adjudication of being a habitual offender is the entry by the court of an order directing such offender not to operate a motor vehicle on the highways of Virginia, and to surrender his license or permit to operate such a vehicle. The offender lives under no threat by the state of incarceration. He is deprived of no civil liberties, rights or privileges, other than the privilege of operating a vehicle on the highways. This privilege has been denied thousands of others who have run afoul of the motor vehicle laws of the state.

If a habitual offender subsequently decides to take the law into his own hands by operating a motor vehicle on the public highways without a valid permit, he becomes subject to prosecution under a criminal law which deals with habitual offenders who drive without a license, and he may receive a greater penalty than a defendant who is not a constant violator of traffic laws. This situation does not arise because of any previous conviction that he may have had during the time that he was accumulating the record that made him a habitual offender. It occurs solely because of his subsequent and deliberate defiance of the law.

A previous conviction and a habitual offender adjudication only bear indirectly on the criminal process that places such offender in peril of imprisonment. In the instant case it was not the Lynchburg conviction that jeopardized Whorley's liberty. It was the fact that after he had been adjudged a habitual offender

he voluntarily involved himself in the commission of a criminal act in Campbell County. The link between Whorley's uncounseled misdemeanor conviction in Lynchburg and his conviction for driving in Campbell County after being adjudged a habitual offender is not only remote, but would be nonexistent except for the deliberate commission of a criminal act by defendant. It was his option, and by his choice, that his liberty was placed in jeopardy.

The far-reaching and catastrophic effect of holding that *Argersinger* completely voids every uncounseled misdemeanor conviction has been heretofore described in *Potts* v. *Superintendent, supra,* by Judge Russell in *Marston,* and by Mr. Justice Powell in *Argersinger.* We would further observe that to set aside the Lynchburg conviction because the jail sentence was imposed in the absence of counsel would accord Whorley a preferred position over that occupied by a motor vehicle offender who suffered imposition of a fine only. Reason, logic and the orderly administration of justice, as well as a fair reading of Mr. Justice Douglas' opinion, require that an uncounseled misdemeanor conviction, as distinguished from the sentence of imprisonment, be invulnerable to an *Argersinger* challenge.

The judgment of the lower court is

*Affirmed.*