# Richmond

## RICHARD LARRY SLAUGHTER

### V.

## COMMONWEALTH OF VIRGINIA

December 4, 1981.

Record No. 811762. .

Present: All the Justices.

788

*Howard C. McElroy (White, Elliott & Bundy,* on briefs), for appellant.

*Jeffrey A. Spencer, Assistant Attorney General (Marshall Coleman, Attorney General; Walter A. McFarlane, Deputy Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

By judgment entered August 5, 1980, the trial court, sitting without a jury, convicted Richard Larry Slaughter of operating a motor vehicle in Washington County after being adjudged an habitual offender, a violation of Code § 46.1-387.8. Appealing that conviction, defendant contends that the underlying habitual offender adjudication was void for want of jurisdiction. The record of the habitual offender proceeding was made part of the record in the instant case.

When a defendant in such a proceeding is a nonresident of the Commonwealth, venue is laid in the Circuit Court of the City of Richmond. Code § 46.1-387.4. On October 13, 1977, the Division of Motor Vehicles (DMV) certified abstracts of Slaughter's driving convictions to the Commonwealth's Attorney for the City of Richmond. The certificate recited that "according to the records of the Division of Motor Vehicles the most recent address of Richard Larry Slaughter is 617 Anderson Street, Bristol, Tennessee." The Commonwealth's Attorney filed an information against Slaughter, and the Circuit Court of the City of Richmond, Division I, issued an order directing Slaughter to show cause "why he

should not be prohibited from operating a motor vehicle on the highways of the Commonwealth."

Pursuant to Code § 46.1-387.5 (Repl. Vol. 1974), process was served upon the DMV Commissioner, and a copy was dispatched by certified mail to Slaughter at the Tennessee address. The record contains no return mail receipt or any other evidence which would indicate that Slaughter received this mailing. Finding that Slaughter, who did not appear at the hearing, "is not a resident of this Commonwealth [and] that he has been duly served with process", the Richmond court entered an order December 19, 1977, adjudging him an habitual offender and ordering him not to operate a motor vehicle in Virginia for a period of ten years. An attested copy of this order, mailed to Slaughter at the Tennessee address, was returned to the court marked "Address Unknown".

In April 1979, Slaughter was arrested and indicted for a violation of this order by driving a motor vehicle in Bristol, Virginia. Defendant moved to quash that indictment on the ground the adjudication was void because he "had no knowledge" of the show cause hearing and because the Richmond Court "had no jurisdiction . . . to make such adjudication since the defendant was not a nonresident of the Commonwealth." The Circuit Court of the City of Bristol sustained the motion by judgment entered February 20, 1980, but remanded Slaughter to custody to await trial in Washington County on an indictment charging another habitual offender violation committed December 20, 1979.

Before he came to trial in Washington County, Slaughter moved to quash the indictment on the grounds that, at all times pertinent to the Richmond proceeding, he was a resident of Virginia, that venue and service of process were erroneously predicated upon nonresidency, and that the adjudication order was, therefore, void for want of jurisdiction. At the pre-trial hearing, Slaughter testified that he had lived at a boarding house at 617 Anderson Street, Bristol, Tennessee, only three weeks in January 1977; that he moved into his sister's home in Bristol, Virginia, and lived there until October or November 1977; and that he moved with his sister's family to a trailer park in Washington County, Virginia, where he resided until March 1978. Slaughter's testimony, corroborated by that of his wife, was uncontradicted. Slaughter further testified that he did not learn about the Richmond adjudication until he was arrested for the Bristol, Virginia, violation. The trial court overruled the motion to quash, conducted

the trial, and entered the judgment to which this appeal is addressed.[1]

A court acquires no jurisdiction over the person of a defendant until process is served in the manner provided by statute, *Broyhill* v. *Dawson,* 168 Va. 321, 191 S.E. 779 (1937), and a judgment entered by a court which lacks jurisdiction over a defendant is void as against that defendant, *Finkel Products* v. *Bell,* 205 Va. 927, 140 S.E.2d 695 (1965). Thus, if service of process in the Richmond proceeding was invalid, the adjudication was void as against Slaughter.

Service was valid only if Slaughter was a nonresident. Pointing to language in Code § 46.1-387.3, the Attorney General argues that residence is to be determined "according to the records of the Division". We agree that, in making its initial determination where venue is to be laid and how process is to be served, the Commonwealth necessarily must rely upon a defendant's most recent address as disclosed by DMV's records. The records upon which the October 1977 certification was based contained abstracts of six convictions and three orders suspending the privilege to drive. Seven of the nine abstracts covering a period of two years listed Slaughter's address as Bristol, Virginia. The May 1976 abstract showed a Tennessee address. Only one showed the 617 Anderson Street, Bristol, Tennessee, address. It was dated January 11, 1977. The last two abstracts, one dated June 14, 1977, and the other August 10, 1977, listed Slaughter's address as Bristol, Virginia.

Hence, at the time the certification was made, the latest DMV records of Slaughter's residence cited a Virginia address. Yet, DMV certified that, according to its records, "the most recent address" was in Tennessee. Explaining the inconsistency, the Attorney General relies first upon evidence that mail dispatched by DMV to Slaughter in June and August 1977 at the Bristol, Virginia, address was returned undelivered. But that fact does not support the inference the Attorney General draws. Undelivered mail indicates that Slaughter had moved to a new address but not that he had moved to one outside the state.

---

[1] The trial court rejected Slaughter's argument that the Commonwealth was collaterally estopped by the Bristol judgment to prosecute the Washington County indictment, and defendant assigns error to that ruling. In the view we take of this case, we need not consider that assignment.

■ The Attorney General suggests a second justification for DMV's certification. Noting that a driver resident in Virginia is required to apply for a Virginia driver's license, Code §§ 46.1-349, -355, to furnish his current address when he applies, Code § 46.1-368, and to notify the DMV when he changes his address, Code § 46.1-368.1, he argues that, inasmuch as Slaughter never complied with these statutory requirements, DMV "was quite justified in certifying that Slaughter was a nonresident according to its records." We disagree. Except for the May 1976 and January 1977 abstracts, all the records upon which the certification was based, accumulated over a period of two years, identified Slaughter as a Virginia resident, and DMV was aware that, despite that fact, he had never obtained a Virginia driver's license. Slaughter's failure to comply with the requirements imposed by statute upon drivers resident in Virginia proves his contempt for the law, but it does not justify the Division's conclusion that the reason he did not comply was that he was a nonresident driver exempt from Virginia's statutes.

■ As we have said, if service of process predicated upon non-residency was invalid, the Richmond court was without jurisdiction *in personam,* and the adjudication order was void as against the defendant. *Beck* v. *Semones' Admr.,* 145 Va. 429, 441, 134 S.E. 677, 680 (1926).

The Attorney General argues that even "[i]f, as he contends, Slaughter's Adjudication was void . . . he could have filed a bill in equity at any time to have the judgment vacated." He insists that "Slaughter does not have the right to collaterally attack the Adjudication order." As authority for the proposition, he relies upon *Whorley* v. *Commonwealth,* 215 Va. 740, 214 S.E.2d 447 (1975), where we affirmed a conviction of an habitual offender violation committed in deliberate defiance of an extant court order. The Attorney General's reliance is misplaced. Whorley never challenged the jurisdiction of the court which entered the order. Rather, he asked us to decide whether he could properly be convicted of violating an order of adjudication which was "based, in part, upon a misdemeanor conviction obtained in the absence of counsel." *Id.* at 740, 214 S.E.2d at 448. Approving several decisions of subordinate federal courts construing the effect of the rule announced by the Supreme Court in *Argersinger* v. *Hamlin,* 407 U.S. 25 (1972), we held that "[a]n uncounseled misdemeanor

conviction . . . is not invalid *per se,* and consequential civil disabilities are not invalid." 215 Va. at 744, 214 S.E.2d at 450.[2]

Thus, we concluded that a nonjurisdictional defect in one of the foundation convictions did not make Whorley's habitual offender adjudication void. But here, the record reveals a jurisdictional defect in the adjudication proceeding itself, and such a defect renders the order of adjudication void *ab initio.* It is immaterial that the order was not attacked by direct appeal or by a bill in equity. "It is conceded by all the authorities that if a judgment is void, it may be assailed anywhere, at any time, in any way, by anybody. It is immaterial whether the assault be direct or collateral." *Beck* v. *Semones' Admr.,* 145 Va. at 441, 134 S.E. at 680.

The adjudication order entered against Slaughter contained a recitation that he "is not a resident of this Commonwealth [and] that he has been duly served with process". Notwithstanding the rule that a recitation in a court's order is a verity, a recitation of jurisdiction is subject to collateral attack.

> [T]he fact that the trial court decided that such service or appearance was valid could not make it so. If the service or appearance was illegal, a decision of the trial court to the contrary could not make it legal. If such were true, then the trial court could never, under any circumstances, enter a void judgment.

*Id.*

> "[T]he record is never conclusive as to the recital of a jurisdictional fact, and the defendant is always at liberty to show a want of jurisdiction, although the record avers the contrary. If the court had no jurisdiction, it had no power to make a record, and the supposed record is not in truth a record."

*Broyhill* v. *Dawson,* 168 Va. at 327, 191 S.E. at 782 (citation omitted). *See* Restatement of Judgments, § 12 (1942). See also *Bloodworth* v. *Ellis,* 221 Va. 18, 267 S.E.2d 96 (1980), where we held that the Full Faith and Credit clause permits a collateral

---

[2] Following the Supreme Court's decisions in *Baldasar* v. *Illinois,* 446 U.S. 222 (1980), and *Lewis* v. *United States,* 445 U.S. 55 (1980), we re-examined and reaffirmed the rule in *Whorley. McClure* v. *Commonwealth,* 222 Va. 690, 283 S.E.2d 224 (1981).

attack upon a recitation of jurisdiction in a foreign judgment when the assailant had no fair opportunity to litigate the question in the foreign court. *Accord, Nero* v. *Ferris,* 222 Va. 807, 284 S.E.2d 828 (1981).

Had Slaughter received notice of the adjudication proceeding, he could have made a special appearance and attacked the jurisdiction of the Richmond court. Denied that opportunity, he was entitled to make the attack collaterally in the Washington County court. In the hearing on his motion to quash the indictment, Slaughter testified that he was a resident of Virginia when the adjudication proceeding was commenced and consummated. His wife testified to the same effect. According to DMV's records, Slaughter's most recent residence was in Virginia. This evidence, which was never contradicted, showed that service of process was invalid and that the adjudication order was void for want of jurisdiction.

We hold, therefore, that the trial court erred in overruling the motion to quash, and we will reverse the judgment and dismiss the indictment.

*Reversed and dismissed.*