Commonwealth of Virginia

v.

Angel M. Washington

August 17, 1995

Case No. (Law) 137912

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on defendant Angel M. Washington's Motion to Dismiss this habitual offender proceeding. Washington claims that the Fifth Amendment Clause of the United States Constitution precludes the Commonwealth from attempting to have him declared an habitual offender. The Court held a hearing, at which the parties stipulated to the evidence, and then took this matter under advisement. The Court has now had the opportunity to fully consider the stipulated evidence, the memoranda of counsel and the applicable authorities. For the reasons hereinafter set forth, the defendant's Motion to Dismiss is denied.

On January 6, 1995, the Commonwealth filed an information alleging that the defendant had been convicted of certain predicate offenses that brought him within the definition of an habitual offender as defined in § 46.2-351 of the Code of Virginia. Washington does not contest the validity of the predicate offenses but rather contends that he was previously punished for each of those offenses and to now revoke his license would constitute successive punishment in contravention of the Double Jeopardy Clause of the Fifth Amendment.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. This protection has been held to prevent both successive prosecutions and successive punishments for the same criminal offense. *North Carolina v. Pearce*, 395 U.S. 711 (1969). Consequently, a court's analysis of the double jeopardy issue in the context of an habitual offender proceeding

must encompass three separate inquiries: (1) whether revocation of a person's driver's license pursuant to Virginia Code § 46.2-351 *et seq.*, constitutes punishment for double jeopardy purposes; (2) whether any such punishment would be imposed in a "separate proceeding" from the underlying predicate offense prosecutions; and (3) whether any such punishment would be for the same "offense" as the underlying predicate offenses. Washington bears the burden of proving that a revocation of his license in this proceeding would violate his double jeopardy rights. *Low v. Commonwealth*, 11 Va. App. 48, 50 (1990).

The genesis of Washington's double jeopardy argument arises from the trilogy of United States Supreme Court cases, *United States v. Halper*, 490 U.S. 435 (1989); *Austin v. United States*, 113 S. Ct. 2801 (1993); and *Dept. of Rev. of Montana v. Kurth Ranch*, 114 S. Ct. 1937 (1994). Taken together, these cases stand for the proposition that civil as well as criminal sanctions can implicate the Fifth Amendment's Double Jeopardy Clause.

In *Halper*, the defendant had already been successfully criminally prosecuted for a violation of the Federal False Claim Statute, 18 U.S.C. § 287, when the government filed an additional action under the Civil False Claims Act. The Supreme Court held that the imposition of a civil sanction in the second proceeding violated the defendant's double jeopardy rights.

> The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads.

*Halper*, 490 U.S. at 447-448.

> Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the *purposes* actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.

*Id.* at 447, n. 7 (emphasis supplied).

An ambiguity in the Court's opinion in *Halper* left open the question whether a sanction, which serves both a remedial and a retributive or deterrent purpose would constitute punishment under a double jeopardy

analysis.[1] This ambiguity was seemingly cleared up by the Court's decision in *Austin*. Although the *Austin* decision rested on Eighth Amendment rather than Fifth Amendment grounds, the Court's analysis was a logical extension of its decision in *Halper*. In holding that civil forfeiture proceedings instituted after a criminal prosecution for violation of federal controlled substance statutes implicated the Eighth Amendment's Excessive Fines Clause, the Court cited its decision in *Halper* and stated:

> Fundamentally, even assuming that §§ 881(a)(4) and (a)(7) serve some remedial purpose, the Government's argument must fail. "[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving retributive or deterrent purposes is punishment, as we have come to understand the term."

*Austin*, 113 S. Ct. at 2812 (*quoting Halper*, 490 U.S. at 448) (emphasis in original).

In *Kurth Ranch*, the Court was confronted with a double jeopardy claim in the context of a Montana statute imposing a tax on possession and storage of dangerous drugs. The defendants therein were criminally prosecuted and sentenced for the underlying drug offense before Montana assessed a tax on the drugs which had formed the basis for their criminal prosecutions. While acknowledging that an analysis of the double jeopardy claim in that case through the use of *Halper's* test for civil penalties was inappropriate, the Court nonetheless held that the tax imposed against the Kurths violated their rights under the Double Jeopardy Clause:

> This drug tax is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment within the contemplation of a constitutional protection that has "deep roots in our history and jurisprudence," *Halper*, 490 U.S. at 440, 109 S. Ct. at 1987, and therefore must be imposed during the first prosecution or not at all.

---

[1] Compare *Halper*, 490 U.S. at 448 ("a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as *also serving* either retributive or deterrent purposes, *is punishment*, as we have come to understand the term.") (emphasis supplied) *with Halper*, at 448-449 ("[w]e therefore hold that under the Double Jeopardy Clause, a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial *but only* as a deterrent or retribution.") (emphasis supplied).

The proceedings Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time "for the same offense."

*Kurth Ranch*, 114 S. Ct. at 1948.

Any theory that this trilogy of Supreme Court decisions signaled the onset of an expansive revolution in double jeopardy jurisprudence has been seriously undermined by the Court's most recent pronouncement on double jeopardy. In *Witte v. United States*, 115 S. Ct. 2199 (1995), the Court had its first opportunity to evaluate the Federal Sentencing Guidelines in the context of a double jeopardy analysis. In *Witte*, the defendant had been involved in a conspiracy to sell cocaine and marijuana in 1990 and 1991. He was initially indicted solely for charges relating to the 1991 marijuana distributions. However, consistent with the Guidelines, the District Court considered the 1990 sales of cocaine and marijuana as "relevant conduct" in computing the appropriate sentence range for the 1991 marijuana sale. Notwithstanding a downward departure from the Guidelines because of the defendant's substantial cooperation, he was still sentenced to a term substantially in excess of what would have been the upper range of the Guidelines if his 1990 conduct had not been considered. Witte was subsequently indicted for his involvement in the 1990 sale of cocaine and sought dismissal of the charge on double jeopardy grounds, arguing that his conduct in the 1990 cocaine transaction had been "taken into account" during the sentencing for the earlier marijuana conviction. The Court was not convinced. The six member majority opinion held that as long as a sentence imposed is within the limits established by the legislature, "the resulting sentence within that range constitutes punishment only for the offense *of conviction* for purposes of the double jeopardy inquiry." *Witte*, 115 S. Ct. at 2208 (emphasis supplied). Justice Scalia's concurring opinion signaled a basis for a potential retreat from the Court's *Halper* analysis, when he reasoned as follows:

It is not true that (as the Court claims) "the language of the *Double Jeopardy* Clause protects against . . . the actual imposition of two punishments for the same offense." *Ante*, at 6. What the Clause says is that no person "shall . . . be subject for the same offence to be twice put in *jeopardy* of life or limb," U.S. Const. Amdt. V (emphasis added), which means twice prosecuted for the same offense. Today's decision shows that depart-

ing from the text of the Clause, and from the constant tradition regarding its meaning, as we did six years ago in *United States v. Halper*, 490 U.S. 435 (1989), requires us either to upset well-established penal practices, or else to perceive lines that do not really exist. Having created a right against multiple punishment *ex nihilo*, we now allow that right to be destroyed by the technique used on the petitioner here: "We do not punish you twice for the same offense," says the Government, "But we punish you twice as much for one offense solely because you also committed another offense, for which other offense we will also punish you (only once) later on." I see no real difference in that distinction, and decline to acquiesce in the erroneous holding that drives us to it.

*Id.* at 2209-10 (Scalia, J., concurring). It is within the framework of these Supreme Court precedents that this Court must analyze the arguments advanced by the Commonwealth and Washington.

One cannot dispute that the revocation of one's driver's license, as a result of being declared an habitual offender, causes a forfeiture to the driver. Nonetheless, relying primarily upon *Prichard v. Battle*, 178 Va. 455 (1941); *Anglin v. Joyner*, 181 Va. 660 (1943); and *Commonwealth v. Ellett*, 174 Va. 403 (1939), the Commonwealth argues that the opportunity to operate a motor vehicle upon the highways of the Commonwealth is a privilege, not a right, and therefore, the withdrawal of the privilege cannot constitute punishment for double jeopardy purposes.

While the Court agrees that this argument may be supported by the language of our Supreme Court's opinions in those cases, I do not agree that these cases are still binding precedent, as subsequent United States Supreme Court decisions have dismantled the basic framework upon which these decisions were built. In *Mackey v. Montrym*, 443 U.S. 1 (1979), the Court weighed the constitutionality of Massachusetts' "refusal" statute's mandatory license suspension against a due process challenge. Although it held that the statute withstood due process scrutiny, the Court made it absolutely clear that a driver's license was a protected property interest. *Id.* at 10; *See also, Davis v. Love*, 431 U.S. 105, 112 (1977); *Bell v. Burson*, 402 U.S. 535, 539 (1971). These U.S. Supreme Court decisions overruled the "privilege" basis for the decisions in *Prichard, Anglin*, and *Ellett*, thereby foreclosing the argument advanced by the Commonwealth herein.

The Commonwealth next argues that *Prichard* and its progeny support the position that suspension of an habitual offender's driver's license is a remedial measure, and therefore does not run afoul of the holding in *Halper*. A number of decisions from the appellate courts of Virginia support the Commonwealth's argument.

In *Huffman v. Commonwealth*, 210 Va. 530 (1970), the defendant alleged that the Virginal Habitual Offender Act (then § 46.1-387.1, *et seq.*) was violative of the United States and Virginia Constitutions in that it was an *ex post facto* law. The Court rejected this position reasoning in part as follows:

> In the next place, we have held that a proceeding to revoke an automobile driver's permit or license is a civil and not a criminal proceeding; that the revocation is not for the punishment of the offender, but is for the protection of the public in removing from the highways a dangerous driver. *Prichard v. Battle*, 178 Va. 455, 462, 17 S.E.2d 393, 395-96 (1941); *Butler v. Commonwealth*, 189 Va. 411, 423, 424, 53 S.E.2d 152, 157 (1949); *Prillaman v. Commonwealth*, 199 Va. 401, 406, 100 S.E.2d 4, 8 (1957).

*Id.* at 532.

In *Davis v. Commonwealth*, 219 Va. 808 (1979), the Court had to determine which party bore the burden of going forward with evidence to support an adjudication under the Habitual Offender Act, when the predicate convictions were all from outside Virginia. In ruling that the defendant had the burden of establishing that out-of-state laws were not substantially conforming to the corresponding Virginia statute, the Court addressed the underlying purpose of the Act.

> The purpose of the Habitual Offender Act is to promote highway safety by denying the privilege of operating motor vehicles to those persons "who by their conduct and record" have demonstrated their lack of concern for the safety of others and their disrespect for law and authority. Code § 46.1-387.1. The Act is civil in nature and does not violate any provisions of the United States or Virginia Constitutions. *McIntosh v. Commonwealth*, 213 Va. 330, 333, 191 S.E.2d 791, 793-794 (1972).

Most recently, in *Nesselrodt v. Commonwealth*, 19 Va. App. 448 (1994), the *en banc* Court of Appeals reiterated that the purpose of the Habitual Offender Act "is to protect the traveling public." *Id.* at 450.

Notwithstanding the above precedents, Washington contends that the license revocation resulting from being adjudicated an habitual offender constitutes punishment for double jeopardy purposes. He argues: (1) that a person may be declared an habitual offender for violations unrelated to safety on the highways (i.e. failure to pay fines), which precludes a finding that the license revocation is remedial in nature; (2) that the license revocation effects a forfeiture, which necessarily constitutes punishment; and (3) that even if the Habitual Offender Statute is partially remedial in nature, language from the Virginia Supreme Court opinion in *Whorley v. Commonwealth*, 215 Va. 740 (1975), established that it is not *solely* remedial and consequently its sanction constitutes punishment under *Halper* and its progeny. The Court will analyze each of these arguments.

The United States Supreme Court's decision in *Halper* disposes of Washington's first argument. Safety on the highways is not the sole remedial purpose which can be asserted for a license revocation. In fact, in *Halper*, the Court found that the civil penalty imposed was not remedial in nature solely because of the "tremendous disparity" between the government's actual damages and the civil penalty authorized by the False Claims Act. *Id.* at 451. Relying in part on *Helvering v. Mitchell*, 303 U.S. 391, 398-405 (1938) (sanction providing reimbursement to government for costs arising from taxpayer's fraud is remedial), the *Halper* Court recognized that a sanction that compensated the government for its actual costs expended accomplished a remedial purpose. *Id.* at 441-43, 449.

Washington's second argument is equally unavailing, as again, the decision in *Halper* undermines his position. In determining whether a sanction constitutes punishment, "it is the purposes actually served by the sanction in question" that must be evaluated. *Halper*, at 447, n. 2.

> This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant *even remedial sanctions* carry the sting of punishment. See, e.g., *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551 (1943) (emphasis added).

*Id.* Each person who is sanctioned suffers some deprivation or forfeiture. As a sanction may be either remedial or punitive in nature, the fact that the

imposition of the sanction effects a forfeiture cannot of itself establish that the sanction constitutes punishment for double jeopardy purposes.

Defendant's final argument presents a somewhat closer question but is also not persuasive. In *Whorley*, the sole issue for our Supreme Court to decide was whether the Commonwealth could establish the validity of the defendant's adjudication as an habitual offender, when one of his predicate convictions was obtained in the absence of counsel. The underlying rationale of the Habitual Offender Act was not an issue before the Court. In dicta however, the Court remarked, in part, as follows:

> Virginia's Habitual Offender Act declared it to be the policy of the state to provide maximum safety for all persons using the highways; to deny the privilege of operating motor vehicles to persons who by their record have demonstrated their indifference to the safety of others and their disrespect for the laws of the state and the orders of its courts; to discourage repetition of criminal acts by individuals; and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws. A reference to the record and to the past conduct of Whorley shows conclusively that he has earned the status of an habitual offender and that to permit him to resume the use of the public highways would represent a serious hazard to the public.

*Id.* at 745-46. Washington seizes upon a portion of this dicta and claims that it constitutes binding precedent that the Habitual Offender Act under which he is to adjudged is, in part, punitive or deterrent in nature and therefore, punishment under *Halper*. This Court disagrees with Washington's conclusion for several reasons. First, his selective use of portions of the language from *Whorley* ignores the totally contrary portion of the very next paragraph, wherein the Court stated:

> A proceeding under Virginia's Habitual Offender Act is not a criminal proceeding. It is one designed *solely* to determine if the past record of an automobile driver is such that he has become a *menace on the highways* and is an habitual offender [emphasis supplied].

*Id.* at 746. This Court refuses to accept the import that Washington urges be placed on his chosen portion of the dicta contained in an opinion

rendered over two decades before the justices of our Supreme Court could have possibly contemplated the potential effect of their gratuitous language. It is entirely inconsistent with all other pronouncements on the subject contained in the opinions of Virginia's appellate courts, including the *Nesselrodt* decision, issued after *Halper, Austin,* and *Kurth Ranch.*

Second, the relevant language from *Whorley,* relied upon by Washington, was seemingly taken by the Court from former § 46.1-387.1 of the Code of Virginia which read as follows:

> § 46.1-387.1. *Declaration of policy.* — It is hereby declared to be the policy of Virginia:
>
> (1) To provide maximum safety for all persons who travel or otherwise use the public highways of the State; and
>
> (2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the Commonwealth, the orders of her courts and the statutorily required acts of her administrative agencies; and
>
> (3) To discourage repetition of criminal acts by individuals against the peace and dignity of the Commonwealth and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws. (Va. Acts, 1968, c. 476.)

Title 46.1 of the Code was repealed in its entirety by the General Assembly in 1989. The Habitual Offender Act was rewritten and codified in § 46.2-351, *et seq.* of the Code. The content of the former § 46.1-387.1 was conspicuously absent from the sections of the revised Act. The other changes made to the Act convince this Court that the deletion was not coincidental. The adoption of Title 46.2 of the Code and the amendments to the Habitual Offender Act enacted in 1989 and subsequent thereto, establish that the purposes of the Act as re-enacted are remedial in nature.

Under the version of the Act in effect at the time of the *Whorley* decision in 1975, a person adjudicated an habitual offender could not be reissued a license for ten years. Va. Code Ann. § 46.1-387.7. The habitual offender could only then be issued a license after a court found good cause shown and the court, in its discretion, deemed it appropriate to restore the license under such terms and conditions as the court deemed appropriate.

Va. Code Ann. § 46.1-387.9. The sole exception to the ten year revocation was that a person declared to be an habitual offender, in part, as a result of a conviction for driving under the influence, could, in the discretion of the court, after five years, be restored the privilege to drive, if the court were satisfied (1) that at the time of the previous convictions, the offender was addicted to or psychologically dependent upon alcohol; (2) the offender was no longer so addicted or dependent; and (3) the offender did not constitute a threat on the highways. Va. Code Ann. § 46.1-387.9:2. However, Title 46.1 did not authorize the issuance of a restricted license to an habitual offender, at any time, under any circumstances.

Now, under the present version of the Act, an offender who was adjudicated, in part, as a result of a DWI conviction can obtain a restricted license after three years, for any of the purposes set out in subsection E of § 18.2-271.1. Va. Code Ann. § 46.2-360(A)(2); and any other person adjudicated can petition for a restricted license after five years. Va. Code Ann. § 46.2-358. Any person eighteen years of age, or older, who was adjudicated, in part, as a result of a juvenile conviction, can, at any time, petition for restoration of driving privileges. Va. Code Ann. § 46.2-359. An offender, whose adjudication was based, in part, on a conviction for driving on a suspended license for failure to pay fines or costs, or furnish proof of financial responsibility, may after three years petition for restoration, Va. Code Ann. § 46.2-361(A); and an offender whose adjudication was based entirely on such convictions, may petition for full restoration as soon as all of the fines and costs have been paid and proof of financial responsibility has been established. Va. Code Ann. § 46.2-361(B).

This Habitual Offender Act, whose purpose was described in *Nesselrodt* as being "to protect the traveling public," *Nesselrodt*, 19 Va. App. at 450, removes from the highways those drivers who have shown that they do indeed either constitute a danger to others on the roadways or have no intention of reimbursing the Commonwealth for fines and costs imposed as a result of their unlawful driving conduct. No loss of freedom or additional monetary sanction can be imposed on those who are adjudicated in these civil proceedings. Offenders who make the Commonwealth whole, either by paying all sums due, or rehabilitating themselves so that they no longer constitute a danger on the highways, can have their driving privileges restored after the expiration of a reasonable period of time. Their continuing rehabilitation can be ordered to be monitored by the VASAP program, so that any relapse can cause the offender to again be taken off the highways. Va. Code Ann. § 46.2-360(A). Finally, all such persons,

whose rehabilitative efforts allow them restoration of driving privileges in the reduced periods authorized by the revised Habitual Offender Act, will, in addition, receive full credit for any periods during which their licenses were administratively revoked under § 46.2-391, prior to their adjudications. Va. Code Ann. § 46.2-360(B)(2).

Consequently, this Court holds that the purposes of the Habitual Offender Act, as presently codified in Virginia, are solely remedial, and therefore do not constitute punishment under *Halper, Austin* and *Kurth Ranch*. Accordingly, Washington's Motion to Dismiss is denied.

As a result of the ruling on the first prong of the double jeopardy analysis, this Court need not determine whether any sanction imposed under Virginia's Habitual Offender Act would be for the "same offense" as that imposed for the underlying predicate convictions.