COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Willis and Senior Judge Hodges
Argued at Richmond, Virginia


CAROL H. LEE, SR.

MEMORANDUM OPINION[*] BY
v.    Record No. 2195-01-2          JUDGE WILLIAM H. HODGES
                                         AUGUST 20, 2002
MARY Y. LEE


FROM THE CIRCUIT COURT OF HANOVER COUNTY
John Richard Alderman, Judge

Thomas W. Blue for appellant.

William S. Francis, Jr., for appellee.


Carol H. Lee (husband) appeals a final decree of divorce

entered on July 26, 2001.  He contends that the decree is void

because the trial court lacked personal jurisdiction over him,

that the trial court erred in finding him guilty of adultery, and

that it erred in its distribution of the marital property and in

its award of spousal support.  We hold that the trial court

properly obtained personal jurisdiction over husband, but that the

evidence was insufficient to prove adultery.  Accordingly, we

reverse the judgment of the trial court and remand for

redetermination of the grounds for divorce, equitable

distribution, and spousal support.

_____

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

On November 28, 2000, Mary Lee (wife) filed a bill of complaint for divorce, requesting that service of process be made on husband at his place of employment.  Not finding husband there, the deputy sheriff served process on Murray Trelford, the safety director of husband's place of employment.

On January 24, 2001, wife filed notice that "depositions of the [wife] and witnesses will be taken" on February 12, 2001. On February 26, 2001, she filed another notice that depositions of wife and witnesses would be taken on March 15, 2001.  The husband was personally served with the latter notice on March 8, 2001.

On March 16, 2001, wife filed a document entitled "STATEMENT IN LIEU OF MARCH 15, 2001 DEPOSITIONS," signed by wife's attorney, William S. Francis, Jr., reciting that "notice of depositions were [sic] properly served on the [husband] and [husband] is here."  The statement further recited that the parties had "off-the-record preliminarily discussed some of the matters surrounding this case," during which it became "obvious to [wife's attorney] that [husband] intends to exercise the rights that he has in contesting this divorce."  The statement recited that because husband had never answered the bill of complaint, wife's attorney believed husband would not contest the divorce or appear at the March 15, 2001 deposition hearing

-

and, therefore, had not secured the presence of a court reporter. When husband appeared, wife's attorney continued the hearing until April 4, 2001, so a reporter could be obtained, and sent notice thereof to husband by first class mail. Neither husband nor an attorney on his behalf appeared at the April 4, 2001 rescheduled deposition hearing.

On June 5, 2001, wife filed a transcript of the April 4, 2001 hearing, at which wife and four additional witnesses testified and wife submitted several exhibits.

On June 29, 2001, wife filed in the trial court a document listing the parties' real and personal property and their incomes so the trial court could equitably distribute that property pursuant to Code § 20-107.3.

Despite notice posted at his usual place of abode, husband did not appear at the July 26, 2001 ore tenus hearing at which the trial court entered the final decree. The record contains no transcript of or evidence from that hearing.

In the July 26, 2001 divorce decree, the trial court awarded wife a divorce on the ground of adultery. It classified, valued, and distributed the parties' property "after considering the factors set forth in [Code] § 20-107.3(E) and the evidence presented concerning each factor, and especially the evidence of the [husband's] acts of adultery which destroyed

-

the marriage," (emphasis added), and awarded wife spousal support.

On August 9, 2001, husband's attorney filed a "Motion to Vacate and Grant Leave for Late Pleadings." Husband asserted he had not received notice of the July 26, 2001 hearing. He further asserted that his misunderstanding regarding certain actions taken by wife and his lack of education had rendered him unable to appreciate the consequences of "failing to respond." He argued that "the evidence offered by" wife had failed to address all "issues set out in" Code § 20-94. Specifically, he asserted that "the evidence does not deny that the alleged adulterous behavior was committed by the procurement or connivance of [wife]." Conceding that wife denied having any sexual relations with him after the adulterous behavior, he alleged that the parties continued to "cohabit in their customary family fashion." He argued that "no direct evidence" linked him "to any specific instance of adultery" and that there was no "corroboration for the hearsay and circumstantial evidence of adultery."

Husband also asserted that the trial court's rulings on equitable distribution and spousal support were "greatly inequitable." He denied "that he is guilty of the adulterous behavior," and, "if permitted," promised to "introduce evidence

-

directly from the allegedly involved persons that there was no adulterous behavior committed by [him]."

On August 15, 2001, the trial court conducted a hearing on husband's motions. Husband's attorney contested the finding of adultery and represented that Mr. and Mrs. McBee, she being the woman with whom husband allegedly committed adultery, were present and "they will testify that's not so." He also suggested the possibility of connivance and/or condonation because "there was cohabitation after the adultery," precluding a finding of adultery. The trial court asked husband's counsel what errors the final decree contained. Counsel replied, "deficiency in evidence as to the quality of the evidence as to the equitable distribution and spousal support and also, . . . the evidence of the adultery itself is poor."

Husband testified that he lived at the address at which the notice of the July 26, 2001 hearing was posted. However, he averred that he was not aware of the hearing until 4:00 p.m. on that day, after conclusion of the 8:30 a.m. hearing. He never argued that the trial court lacked jurisdiction because he was never personally served with the bill of complaint.

The trial court found that husband "neglected this thing." It also "assume[d] for purposes of th[e August 15] hearing" that husband's witness, Mrs. McBee, would testify that no adultery

-

took place.  Nevertheless, the trial court denied husband's motion.

## A. PERSONAL JURISDICTION

Husband contends the final decree of divorce should be vacated for lack of personal jurisdiction, because service of the bill of complaint was defective and, thus, incapable of establishing in personam jurisdiction over him.

Wife argues that husband subjected himself to the court's jurisdiction by appearing twice in connection with the suit.

### 1. Raising Lack of Personal Jurisdiction for First Time on Appeal

"A court acquires no jurisdiction over the person of a defendant until process is served in the manner provided by statute, and a judgment entered by a court which lacks [personal] jurisdiction over a defendant is void as against that defendant."  Slaughter v. Commonwealth, 222 Va. 787, 791, 284 S.E.2d 824, 826 (1981) (citations omitted).  Husband can raise a lack of personal jurisdiction for the first time in this Court. See Wackwitz v. Roy, 244 Va. 60, 63, 418 S.E.2d 861, 863 (1992).

### 2. Personal Jurisdiction and Waiver

Code § 20-99 provides that process in a suit for divorce may be served in any manner authorized by Code § 8.01-296.  That code section provides in pertinent part:

> In any action at law or in equity or any
> other civil proceeding in any court,

-

process, for which no particular mode of service is prescribed, may be served upon natural persons as follows:

1. By delivering a copy thereof in writing to the party in person; or

2. By substituted service in the following manner:

a. If the party to be served is not found at his usual place of abode, by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his family, other than a temporary sojourner or guest, and who is of the age of sixteen years or older; or

b. If such service cannot be effected under subdivision 2 a, then by posting a copy of such process at the front door or at such other door as appears to be the main entrance of such place of abode.

Code § 8.01-296.

Service upon husband's supervisor is not one of the prescribed methods for serving the bill of complaint. Accordingly, the service was invalid and was insufficient to subject husband to the trial court's jurisdiction. However,

[I]f a writ issues irregularly or the service thereof is imperfect a party may appear specially and plead in abatement, but where he does neither and appears generally, then whatever may have been the defect in the process or the service is waived, for general appearance constitutes waiver of such defect.

Scott v. Scott, 142 Va. 31, 35-36, 128 S.E. 599, 600 (1925).

-

"Broadly stated, any action on the part of defendant, except to object to the jurisdiction over his person which recognizes the case as in court, will constitute a general appearance."  6 C.J.S. Appearances § 19 (1975).

> While there is some authority questioning the ability to make a special appearance after entry of judgment, a motion to vacate a judgment or order, based on the sole ground of want of jurisdiction of the person, does not constitute a general appearance, even though defendant's counsel unsuccessfully attempts to elicit evidence with respect to the circumstances under which the judgment was entered.
>
> A general appearance is entered, however, if a motion to vacate a judgment or order is based on other than jurisdictional grounds, either wholly, or in connection with an objection to the jurisdiction, or if in addition to the request to vacate the judgment defendant asks for other relief . . . .

Id. at § 26.

"A party appearing in a proceeding to set aside a judgment previously rendered, without objecting to the jurisdiction of the court to set aside the judgment, thereby waives the question of jurisdiction."  Id. at § 48.

Rule 1:1 permits the trial court to retain jurisdiction of a proceeding until twenty-one days from the date of entry of its final order.  By moving the trial court to vacate its decree while it retained jurisdiction to modify, vacate or suspend its judgment and by arguing the merits of the case without raising

-

the issue of personal jurisdiction, husband made a general appearance.  He thus waived service of process and submitted himself to the trial court's jurisdiction.  See Minton v. First Nat'l Exch. Bank, 206 Va. 589, 595, 145 S.E.2d 139, 143 (1965).

### B.  ADULTERY

Husband contends the evidence was insufficient to prove adultery.  We agree.  Therefore, we need not address condonation or the absence of connivance.

### 1.  Evidence of Adultery

The evidence consisted of a transcript of the April 4, 2001 deposition hearing, documentary evidence presented by wife during that hearing, and the document prepared by wife's attorney listing the parties' assets and incomes.  Husband submitted no evidence.

At the April 4, 2001 deposition hearing, wife averred that after July 2000, she hired a private detective, who videotaped husband spending the night at the residence of Mr. and Mrs. Richard McBee.  Wife testified that she received from the private detective a written summary of everything he saw.  She failed to provide the date of the videotaped conduct.  No videotape or summary was submitted into evidence, and the unnamed private investigator did not testify.

Wife testified that she received a telephone call from an unidentified woman, who said "I've been screwing your husband

-

for thirty years." The caller indicated that she was African-American and that she was pregnant. Wife recognized the voice as belonging to a person who had previously called approximately fifty times to speak to husband. A short time later, the same woman called back and said the first call was a mistake. Wife did not indicate the dates on which she received the phone calls.

The following exchange took place between wife and her attorney:

> Q: To your knowledge has your husband also been involved with a gentleman that you believe is this lady's husband?
>
> A: Yes.
>
> Q: What's his name?
>
> A: Mr. McBee.
>
> Q: Do you know his full name?
>
> A: Richard McBee.
>
> Q: Was Mr. McBee present in the video recording that the detective took?
>
> A: Yes.
>
> Q: Has Mr. McBee called and made demands on your husband numerous times over the years?
>
> A: Yes.
>
> Q: Has your husband also responded, meaning that he immediately would leave and do whatever it was that Mr. McBee asked him to do?
>
> A: Yes.

-

Q: Has there been an exchange of money from Mr. McBee to your husband over the years?

A: Yes, sir.

Q: Has that increased from the summer of 2000 forward?

A: Yes.

Q: Do you know what any demands by Mr. McBee were for?

A: No.

Q: Did your husband, to your knowledge, make any money payments to Mr. McBee?

A: Yes.

Q: Do you have any idea what they were for?

A: No.

Q: Up to the July date the summer of 2000 and based upon the information you had, did you also believe that your husband had another family, that being children that he was somehow involved with socially and economically?

A: Yes, sir.

Wife presented no evidence to corroborate her beliefs concerning husband.

According to wife, she and husband had had no sexual relations for the past twenty-nine years because he was medically unable to perform sexual intercourse. The following exchange between wife and her attorney ensued:

Q: On or about the time of the summer of 2000 did your husband make a statement to someone else that he had discovered Viagra

and he can get all he wanted and as a result he had a renewed interest in sex?

A: Yes, sir.

Q: Did he and you renew sexual relations at that time at all?

A: No, sir.

Wife and her attorney also had the following exchange at the deposition hearing:

Q: Mrs. Lee, off the record I asked you if there was anything else that you wanted to introduce, and you indicated that there was with regard to proof about your husband's adultery or abandonment of the marriage and constructive desertion by him. You indicated to me that this summer after July of 2000 that you overheard a phone conversation that your husband was having with the same woman that had said she had been screwing your husband for thirty years and she was black. Would you testify what you overheard on that phone conversation?

A: I heard him tell her he loved her, and they set up a date for the next day.

Q: Was that date for him to meet her the next day?

A: Yes.

Q: Did you hear the time and place they were to meet?

A: He left the house early the next morning, the destination I don't know.

Q: Did he often continuously leave the house on weekends and stay gone where you didn't know where he would be?

A: Yes, sir.

-

Q:  Based upon the information you have now,
is it your testimony that [sic] was with
this woman or her family on all of these
occasions?

A:  Yes, sir.

Patsy Worsham, the parties' married daughter, testified on

wife's behalf as follows:

[Wife's Attorney]:  You've been present here
this morning and heard all of the questions
that I've asked your mother?

[Ms. Worsham]:  Yes.

[Wife's Attorney]:  Have you heard the
answers she's given?

[Ms. Worsham]:  Yes.

[Wife's Attorney]:  If I were to ask you the
same questions at this time would your
answers be exactly the same?

[Ms. Worsham]:  Yes, sir.

[Wife's Attorney]:  Do you have a very close
personal relationship with your mother so
that you, yourself, have personal knowledge
of everything that I asked of her and the
answers she's given, correct?

[Ms. Worsham]:  Yes.

[Wife's Attorney]:  With regard to anything
your father has done in the way of adultery
or otherwise to end the marriage, is there
any other statement or evidence that you
wish to offer?

[Ms. Worsham]:  No, sir.

A further exchange between Ms. Worsham and wife's attorney

occurred as follows:

-

[Wife's Attorney]:  You heard refer or respond [sic] to my question about the investigator, private investigator?  Have you, yourself, actually, were you there on at least one or more occasions to see what your father was doing, were you not?

[Ms. Worsham]:  Yes.

[Wife's Attorney]:  And did you see him staying at or coming and going at this address we talked about on Jefferson Davis Turnpike?

[Ms. Worsham]:  Yes.

[Wife's Attorney]:  Have you also looked at the videotape of what we talked about?

[Ms. Worsham]:  Yes, sir.

[Wife's Attorney]:  Is that consistent with what you saw?

[Ms. Worsham]:  Yes, sir.

[Wife's Attorney]:  Have you ever confronted your father and asked if he had a relationship with another family?

[Ms. Worsham]:  No, sir.  There has been no communication since we were kids.

Worsham further testified that she had overheard a conversation between husband and an unidentified woman in December 2000.  Worsham affirmed that the woman told husband she was not going to have a hysterectomy and she intended to have a baby.

Angela Lee, another daughter of the parties, testified that during the summer of 2000, she found a ladies jacket behind a seat in husband's truck.  Husband told her it belonged to a lady

-

with whom he went fishing, who must have left it in his truck. Another time, Ms. Lee found in husband's truck an earring, a figurine "like the world's greatest grandfather," a child's hair barrette, and a pack of cigarettes.

Alvin Saunders is the parties' son-in-law.  He testified that husband advised him that he could get any amount of Viagra that Saunders wanted.

The trial court found that "the acts of adultery" by husband "have been fully proven by the evidence submitted herein; and that [wife] has not voluntarily cohabited with [husband] since obtaining knowledge of the commission of these adulterous acts."  The trial court further found that wife had not condoned husband's adultery and "no reconciliation has taken place."

## 2.  Discussion

"'To establish a charge of adultery the evidence must be clear, positive and convincing.  Strongly suspicious circumstances are insufficient.  Care and circumspection should accompany consideration of the evidence.'"  Romero v. Colbow, 27 Va. App. 88, 93-94, 497 S.E.2d 516, 519 (1998) (quoting Painter v. Painter, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975)).

> "A charge of adultery is one of a criminal offense and especially and uniquely damaging to the reputation of the party charged.  The general and widely recognized presumption of innocence must be indulged against it, and,

-

> while it is not required to be proved beyond a reasonable doubt, as in a criminal proceeding, the evidence must be at least clear and positive and convincing. Raising a considerable or even strong suspicion of guilt is not enough."

Id. (quoting Haskins v. Haskins, 188 Va. 525, 530-31, 50 S.E.2d 437, 439 (1948)).

The evidence created a suspicion that husband may have had an intimate relationship with a person not his wife. However, it failed to prove adultery. Wife's attorney repeatedly propounded to the witnesses questions that assumed facts not in evidence. Many of the witnesses' representations were based on hearsay and speculation without any foundation as to their basis of knowledge. Some of the evidence upon which the trial court relied could well have described innocent activity or activity unrelated to adultery, such as weekend fishing trips, visiting Mr. McBee, and money paid to Mr. McBee. In toto, the evidence failed to prove adultery clearly and convincingly, and the trial court erred in granting the divorce on that ground.

C. EQUITABLE DISTRIBUTION AND SPOUSAL SUPPORT

Code §§ 20-107.1(E) and 20-107.3(E)(5) require a trial court to consider "the circumstances and factors which contributed to the dissolution of the marriage" in determining equitable distribution and spousal support.

-

Because the trial court relied upon adultery in making the equitable distribution and spousal support awards, we reverse those awards and remand for reconsideration of equitable distribution and spousal support in accordance with the findings expressed herein.

<u>Reversed and remanded.</u>